UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARY BOYLE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>*Defendants*. | Civil Action No. 8:25-cv-1628-MJM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Stephanie Garlock
(D. Md. Bar No. 31594)
Nicolas A. Sansone
(*pro hac vice* application pending)
Allison M. Zieve
(*pro hac vice* application pending)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

**INTRODUCTION**

The Consumer Product Safety Commission (CPSC) is a multimember expert body that, for more than fifty years, has worked to protect Americans from the threat of injury and death presented by hazardous consumer products. Recognizing the importance of ensuring that the CPSC's work be independent and free from outside pressures, Congress provided that CPSC Commissioners could be removed from office before the expiration of their terms "for neglect of duty or malfeasance in office but for no other cause." 15 U.S.C. § 2053(a).

Until now, every presidential administration has respected Congress's directive. But less than two weeks ago, President Donald J. Trump flouted this straightforward statutory provision by purporting to terminate three of the five sitting CPSC Commissioners—Plaintiffs Mary Boyle, Alexander Hoehn-Saric, and Richard Trumka Jr.—although they had not engaged in, and were not even alleged to have engaged in, any neglect of duty or malfeasance in office. The terminations violated Plaintiffs' statutory for-cause removal protections.

Plaintiffs now move for a preliminary injunction against Defendants Secretary of the Treasury Scott Bessent, Director of the Office of Management and Budget Russell Vought, and Acting Chairman of the CPSC Peter A. Feldman, and for a temporary restraining order (TRO) to preserve Plaintiffs' ability to serve in the roles for which they were appointed and confirmed pending resolution of Plaintiffs' motion for a preliminary injunction. Every factor that governs the award of such relief weighs in Plaintiffs' favor. First, Plaintiffs are likely to succeed on the merits of their claim. No lawful justification exists for their termination, and any argument that Plaintiffs' statutory removal protections violate the Constitution is squarely foreclosed by Supreme Court precedent. Second, Plaintiffs suffer irreparable harm every day that they are barred from using their limited time in office to perform urgent and important work that would keep Americans safe

and contribute substantially to Plaintiffs' sense of purpose and fulfillment. Third, the balance of equities and the public interest support the enforcement of a statutory provision that Congress found necessary to ensure the integrity of the CPSC's vital consumer-safety work.

This Court should thus set a briefing schedule for Plaintiffs' motion for a preliminary injunction and, in the meantime, enter a TRO without delay, so that Commissioners Boyle, Hoehn-Saric, and Trumka can get back to work protecting the American people.

## BACKGROUND

**Legal Background**

In the 1972 Consumer Product Safety Act (CPSA), Pub. L. No. 92-573, 86 Stat. 1207, Congress created the CPSC to advance the Act's goals, which include "protect[ing] the public against unreasonable risks of injury associated with consumer products" and "assist[ing] consumers in evaluating the comparative safety of consumer products." 15 U.S.C. § 2051(b)(1)–(2). The Act specifies that the CPSC consists of five Commissioners who are nominated by the President and confirmed by the Senate, and who hold "background and expertise in areas related to consumer products and protection of the public from risks to safety." *Id.* § 2053(a). Among other things, Commissioners are responsible for promulgating standards for consumer-product safety, *id.* § 2056, recalling unreasonably hazardous products from the market, *id.* § 2057, and conducting product-safety investigations and research, *id.* § 2076.

To ensure that the CPSC remains an expert body that is "unfettered by political dictates, self-interested industry pressure or blind consumer zeal," 122 Cong. Rec. S15211 (daily ed. May 24, 1976), Congress established it as an "independent regulatory commission," 15 U.S.C. § 2053(a), and erected statutory guardrails to protect the CPSC from undue political pressures. Congress ensured that each President would have the opportunity to influence the composition of

the CPSC by providing that the Commissioners would serve staggered, seven-year terms, *id.* § 2053(b)(1), and that any Commissioner who was appointed to fill a vacancy created by the premature departure of a predecessor would be appointed only for the remainder of the predecessor's term, *id.* § 2053(b)(2). *See also id.* (authorizing a Commissioner appointed in this way to "continue to serve after the expiration of this term until his successor has taken office" for up to a maximum of one year). Congress also provided that "[n]ot more than three of the Commissioners shall be affiliated with the same political party." *Id.* § 2053(c). And Congress provided that Commissioners may be "removed by the President" before the end of their terms only "for neglect of duty or malfeasance in office but for no other cause." *Id.* § 2053(a).

**Factual Background**

Plaintiffs Mary Boyle, Alexander Hoehn-Saric, and Richard Trumka Jr. all have professional backgrounds in consumer-protection issues. *See* Boyle Decl. ¶ 1; Hoehn-Saric Decl. ¶ 1; Trumka Decl. ¶ 1. Each of them was nominated by President Joseph R. Biden Jr. and confirmed by the Senate to serve as a CPSC Commissioner. *See* Boyle Decl. ¶ 2; Hoehn-Saric Decl. ¶ 2; Trumka Decl. ¶ 2. Commissioner Boyle was confirmed on June 22, 2022, to serve out the remainder of a predecessor's term, set to expire on October 27, 2025, Boyle Decl. ¶ 2, although Commissioner Boyle may continue to serve until October 27, 2026, if a successor is not installed before that time. 15 U.S.C. § 2053(b)(2). Commissioner Hoehn-Saric was confirmed on October 7, 2021, to serve out the remainder of a predecessor's term, set to expire on October 27, 2027, Hoehn-Saric Decl. ¶ 2, although Commissioner Hoehn-Saric may continue to serve until October 27, 2028, if a successor is not installed before that time. 15 U.S.C. § 2053(b)(2). And Commissioner Trumka was confirmed on November 16, 2021, to serve a seven-year term that expires on October 27, 2028. Trumka Decl. ¶ 2.

3

Plaintiffs have performed ably in their roles and have never been accused by either of the Presidents under whom they have served of neglect of duty or malfeasance in office. Boyle Decl. ¶ 4; Hoehn-Saric Decl. ¶ 4; Trumka Decl. ¶ 3. Each of them takes pride in their work as a CPSC Commissioner and believes that their work has played an important role in protecting consumers from injury and death. Boyle Decl. ¶ 17; Hoehn-Saric Decl. ¶ 15; Trumka Decl. ¶ 14.

The CPSC is now facing challenges that urgently require Plaintiffs' participation. Following the inauguration of President Trump, the presidential administration has announced a policy of reducing the size of the federal workforce and has attempted to effectuate that goal by instituting a federal hiring freeze, *see Hiring Freeze*, Presidential Mem. (Jan. 20, 2025),[1] offering the option of deferred resignation to federal workers, *see* U.S. Off. of Personnel Mgmt., *Deferred Resignation Email to Federal Employees* (Jan. 28, 2025),[2] and directing agency heads to develop and submit plans for reductions in force (RIFs), *see* "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 14, 2025). The hiring freeze and deferred-resignation program have caused virtually every CPSC department to be understaffed, with some divisions not functioning at all. *See* Boyle Decl. ¶ 6; Hoehn-Saric Decl. ¶ 6; Trumka Decl. ¶ 5. And Plaintiffs believe that the RIF plans formulated by Defendant Feldman, CPSC's Acting Chairman, will, if implemented, compound this problem and compromise the CPSC's ability to prevent consumer-product injuries and deaths. *See* Boyle Decl. ¶ 8 & Exh. B; Hoehn-Saric Decl. ¶ 8; Trumka Decl. ¶ 7.

Plaintiffs have voiced their concerns about the impact of the proposed RIFs, including at a May 7, 2025, meeting of the Commission. Boyle Decl. ¶¶ 8–10 & Exhs. A & B; Hoehn-Saric Decl.

---

[1] https://www.whitehouse.gov/presidential-actions/2025/01/hiring-freeze.
[2] https://www.opm.gov/fork/original-email-to-employees.

4

¶¶ 8–9; Trumka Decl. ¶¶ 7–8. Starting the very next day, Defendants took steps that have cut off Plaintiffs' ability to participate in these ongoing, time-sensitive conversations. On May 8, Commissioners Boyle and Trumka received emails from Trent Morse, Deputy Director of Presidential Personnel, the bodies of which stated, in their entirety: "On behalf of President Donald J. Trump, I am writing to inform you that your position on the Consumer Product Safety Commission is terminated effective immediately. Thank you for your service." Boyle Decl. ¶ 11 & Exh. C; Trumka Decl. ¶ 9 & Exh. A. On the following day, May 9, CPSC security prevented Commissioner Hoehn-Saric and two of his staff members from entering their offices at CPSC headquarters. Hoehn-Saric Decl. ¶ 10. After about an hour, during which time Commissioner Hoehn-Saric waited in the lobby and made multiple attempts to reach Acting Chairman Feldman by phone, Acting Chairman Feldman called Commissioner Hoehn-Saric and informed him that the President had terminated him from his role as CPSC Commissioner and that he should leave the premises. Hoehn-Saric Decl. ¶ 10. At no point was neglect of duty or malfeasance in office cited as justification for the purported termination of any of the Plaintiffs. Boyle Decl. ¶ 12; Hoehn-Saric Decl. ¶ 11; Trumka Decl. ¶ 10.

Since receiving notification of their purported terminations, Plaintiffs have been unable to enter their offices at CPSC unescorted, access their CPSC email accounts, use their government-issued phones, log on to CPSC's computer network, or access any of their electronic files. Boyle Decl. ¶ 13; Hoehn-Saric Decl. ¶ 12; Trumka Decl. ¶ 11. Plaintiffs were required to return their CPSC identification badges, keys, phones, credit cards, and computer equipment, and Plaintiffs' staff members have received termination notices, citing as justification Plaintiffs' terminations. Boyle Decl. ¶¶ 14–15; Hoehn-Saric Decl. ¶¶ 12–13; Trumka Decl. ¶¶ 11–12. Plaintiffs have received "separation packages" and understand that they will no longer be receiving the pay and

benefits to which CPSC Commissioners are entitled. Boyle Decl. ¶ 16; Hoehn-Saric Decl. ¶ 14; Trumka Decl. ¶ 13.

Plaintiffs filed this lawsuit against President Trump, Secretary Bessent, Director Vought, and Acting Chairman Feldman in their official capacities. Plaintiffs allege that President Trump acted ultra vires and in violation of the CPSA by terminating them absent neglect of duty or malfeasance in office and that Defendants Bessent, Vought, and Feldman acted ultra vires and in violation of the CPSA by taking action to effectuate their terminations, including by obstructing their access to CPSC staff and resources and by withholding their pay and benefits.

## LEGAL STANDARD

The standards for issuing a TRO and a preliminary injunction are the same, with the only distinction being the "accelerated briefing schedule and time constraints" for evaluating a TRO motion. *Ass'n of Cmty. Cancer Ctrs. v. Azar*, 509 F. Supp. 3d 482, 493 n.8 (D. Md. 2020). To obtain either form of relief, a movant must show "(1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the [movant's] favor; and (4) an injunction is in the public interest." *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 492 (4th Cir. 2025). The third and fourth factors "merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Where, as here, a party moves for both a TRO and a preliminary injunction, a court may enter a TRO on an emergency basis and then proceed to resolve the motion for a preliminary injunction before the expiration of the TRO. *See, e.g.*, *Gen. Parts Distribution, LLC v. St. Clair*, 2011 WL 6296746, at *3 (D. Md. Dec. 14, 2011).

**ARGUMENT**

**I.     Plaintiffs are likely to succeed on the merits.**

Plaintiffs are likely to succeed on the merits of their claim that their purported terminations violate the CPSA. Under that statute, CPSC Commissioners are statutorily entitled to serve out the entirety of their terms unless they are terminated for "neglect of duty or malfeasance in office." 15 U.S.C. § 2053(a). At no point has the President or anybody speaking on his behalf attempted to claim that Plaintiffs have committed neglect of duty or malfeasance in office, and any such claim would be without foundation. Boyle Decl. ¶ 12; Hoehn-Saric Decl. ¶ 11; Trumka Decl. ¶ 10. Because the CPSA is clear that "no other cause" may lawfully support the President's termination of a CPSC Commissioner, 15 U.S.C. § 2053(a), there can be no dispute that Plaintiffs' terminations are facially inconsistent with the CPSA's protections.

The current presidential administration has recently taken the position that statutory protections against the removal of members of an independent agency unconstitutionally impinge on the President's executive authority under Article II of the U.S. Constitution. *See* Letter from Sarah M. Harris, Acting Solicitor General, to Sen. Richard J. Durbin on Restrictions on the Removal of Certain Principal Officers of the United States (Feb. 12, 2025).[3] Supreme Court precedent, however, forecloses this position as to the CPSC.

In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court found it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of" the principal officers of an expert multimember commission with regulatory authority—in that case, the Federal Trade Commission (FTC). *Id.* at 629. Where Congress tasks an "administrative body" with "carry[ing] into effect legislative policies embodied in [a] statute in accordance with

---

[3] https://perma.cc/D67G-FKK4.

the legislative standard therein prescribed," *id.* at 628, and where that body is composed of "nonpartisan" members who are "called upon to exercise the trained judgment of a body of experts," *id.* at 624, the Court concluded that Congress may permissibly allow the body's members to "maintain," to some degree, "an attitude of independence against the [President's] will" by "forbid[ding] their removal except for cause," *id.* at 629.

The CPSC is precisely the sort of administrative body that was at issue in *Humphrey's Executor*. Both the CPSC and the FTC consist of five members, no more than three of whom may belong to the same political party, who are appointed by the President with the advice and consent of the Senate to serve staggered, seven-year terms. 15 U.S.C. §§ 2053(a)–(c); *see Humphrey's Executor*, 295 U.S. at 619–20 (describing the FTC's identical structure). Like the FTC, the CPSC is a "body of experts" within their fields. *Humphrey's Executor*, 295 U.S. at 624; 15 U.S.C. § 2053(a) (providing that CPSC Commissioners must have "background and expertise in areas related to consumer products and protection of the public from risks to safety"). And the "quasi legislative … powers," *Humphrey's Executor*, 295 U.S. at 628, of the CPSC mirror those that the FTC has held from the time of *Humphrey's Executor* to today. Like the FTC, the CPSC enjoys "wide powers of investigation," *id.* at 621 (FTC); 15 U.S.C. § 2076 (CPSC), and both entities have authority to issue substantive regulations. *Compare* Federal Trade Commission Act, Pub. L. No. 63-203, § 6(g), 38 Stat. 717, 722 (1914), *codified as amended at* 15 U.S.C. § 46(g), *with* 15 U.S.C. § 2056(a) (empowering the CPSC to promulgate "consumer product safety standards").

In other words, the CPSC—like the FTC—is "a multimember body of experts, balanced along partisan lines, that perform[s] legislative … functions." *Seila Law LLC v. CFPB*, 591 U.S. 197, 216 (2020). And as the Supreme Court has reaffirmed as recently as 2021, "*Humphrey's Executor* permit[s] Congress to give for-cause removal protections" to such bodies. *Id.*; *see Collins*

8

*v. Yellen*, 594 U.S. 220, 250–51 (2021) (noting the continuing vitality of *Humphrey's Executor*). Since then, courts including the Fifth and Tenth Circuit Courts of Appeals have accordingly upheld CPSC Commissioners' statutory removal protections as fully consistent with the Constitution. *See Magnetsafety.org v. CPSC*, 129 F.4th 1253, 1265–66 (10th Cir. 2025); *Consumers' Research v. CPSC*, 91 F.4th 342, 351–56 (5th Cir. 2024); *United States v. SunSetter Prods. LP*, 2024 WL 1116062, at *2–4 (D. Mass. Mar. 14, 2024).

Although *Humphrey's Executor* characterized the FTC's power as nonexecutive, 295 U.S. at 628, the Supreme Court has declined to "revisit" that precedent, *Seila Law*, 591 U.S. at 228, despite stating that the characterization "has not withstood the test of time," *id.* at 216 n.2. Instead, the Court has made clear that the holding in *Humphrey's Executor* turned on the substance of the FTC's powers and not on the label applied to them. *Humphrey's Executor*, the Court has explained, is a precedent that recognizes an "exception[]" to the President's "power to remove … those who wield *executive* power on his behalf" in a manner that resembles the FTC's. *Id*. at 204 (emphasis added); *see Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495 (2010) (describing *Humphrey's Executor* as involving "protected tenure separat[ing] the President from an officer exercising executive power").

At bottom, the "real question" for Article II purposes is not whether a tenure-protected officer holds an executive role, but whether the protections "are of such a nature that they impede the President's ability to perform his constitutional duty." *Morrison v. Olson*, 487 U.S. 654, 691 (1988). As *Humphrey's Executor* held, and as the Supreme Court has continued to state in the ninety years since, tenure protections for members of multimember bodies like the CPSC are not of that nature.

## II.   Plaintiffs will suffer irreparable harm absent preliminary relief.

Plaintiffs hold time-limited positions of great national responsibility. Every day that they are barred from performing their duties as CPSC Commissioners represents an irretrievable opportunity to further the safety of American consumers. In the months or years that might elapse before this case reaches final judgment, Plaintiffs' terms will dwindle and potentially expire, compromising Plaintiffs' ability to fulfill their statutory mandates. Put simply, "the loss of the ability to do what Congress specifically directed [Plaintiffs] to do cannot be remediated with anything other than equitable relief." *Dellinger v. Bessent*, — F. Supp. 3d —, 2025 WL 471022, at *11 (D.D.C. Feb. 12, 2025), *appeal dismissed*, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025); *see Wilcox v. Trump*, — F. Supp. 3d —, 2025 WL 720914, at *15 (D.D.C. Mar. 6, 2025) (noting that being "deprived of the ability to carry out [one's] congressional mandate … cannot be retroactively cured by monetary damages"), *appeal filed* No. 25-5057 (D.C. Cir.); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173 (1803) ("The value of a public office[,] not to be sold, is incapable of being ascertained; and the [officer] has a right to the office itself, or to nothing.").

What is more, Plaintiffs' participation at the agency is urgently needed today. As Plaintiffs have attested, the CPSC is poised to engage in RIFs that Plaintiffs believe will dramatically undermine the agency's ability to continue functioning. *See* Boyle Decl. ¶¶ 8–9 & Exh. B; Hoehn-Saric Decl. ¶ 8; Trumka Decl. ¶ 7. Unless Plaintiffs are reinstated immediately, they will lose the opportunity to participate in consequential decisions that will shape the future of the agency. In contrast, if Defendants are permitted to bar Plaintiffs from service during the pendency of the lawsuit—or even during the pendency of Plaintiffs' motion for a preliminary injunction—the CPSC to which Plaintiffs ultimately return may have changed radically and irreversibly. Plaintiffs take pride and find meaning in their service as CPSC Commissioners, Boyle Decl. ¶ 17; Hoehn-

10

Saric Decl. ¶ 15; Trumka Decl. ¶ 14, and that fulfillment would evaporate if changes to the agency—implemented during Plaintiffs' absence and without their participation—hamstrung Plaintiffs from acting decisively and effectively to protect American consumers.

Even in the context of private employment, the loss of a job can in an "extraordinary situation" create the sort of irreparable injury that justifies the exercise of a court's equitable powers. *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Here, then, where Plaintiffs challenge the loss of a public office that carries out essential, congressionally mandated work that serves the national interest, the risk of irreparable harm is all the more acute. *See Harris v. Bessent*, — F. Supp. 3d —, 2025 WL 679303, at *13 (D.D.C. Mar. 4, 2025) (contrasting a "probational employee," who might not be irreparably harmed by losing a job, with "a member of the board of an independent agency, [who] was appointed by the President and confirmed by the Senate, and enjoys tenure protections to preserve her independence"), *appeal filed* No. 25-5055 (D.C. Cir.).

**III.    The balance of equities and public interest support granting preliminary relief.**

As against the certain and irreparable harms that Plaintiffs will face if they are not immediately reinstalled as Commissioners, Defendants would face no cognizable harm at all if this Court were to enter preliminary relief. Plaintiffs have served ably as Commissioners for years—accruing valuable experience all the while. Even when terminating them, Defendants identified no defect in their performance or, indeed, any reason at all why they should not continue to serve. To the extent that the President claims that he is injured simply by an inability to shape the CPSC's membership, he will soon have the opportunity to do so, in the manner that Congress directed, upon the expiration of Commissioner Boyle's term this fall.

Meanwhile, Congress made the considered judgment that authorizing the President to exercise total control over the CPSC's membership would disserve the public interest by

11

compromising the agency's independence. Although the Fourth Circuit has cautioned courts not to "collapse[] the first [TRO] factor—likelihood of success on the merits—with the merged balance of equities and public interest factor" by finding that a governmental action "is against the public interest because it is unlawful," *USA Farm Labor, Inc. v. Micone*, 2025 WL 586339, at *4 (4th Cir. Feb. 24, 2025), this Court may take into account the fact that "society expects" the CPSC's disinterest and that Congress guaranteed that disinterest out of a belief that it would better protect public safety. *Am. Fed. of State, Cty. & Municipal Emps., AFL-CIO v. Soc. Sec. Admin.*, — F. Supp. 3d —, 2025 WL 868953, at *68 (D. Md. Mar. 20, 2025); *see also Harris*, 2025 WL 679303, at *13 (reasoning that a multimember expert agency's "independence would evaporate if the President could terminate its members without cause, even if a court could later order them reinstated"). Public perception that the CPSC is a partisan body whose members act according to political pressure rather than their own expert judgment could undermine confidence in the essential guidance that the agency provides on consumer safety. The result, as Congress envisioned, would be greater injury and death.

## CONCLUSION

This Court should enter a temporary restraining order barring Defendants Bessent, Vought, and Feldman from obstructing Plaintiffs from performing their duties as CPSC Commissioners in any way, including by obstructing their access to their offices, email accounts, CPSC equipment, files, and staff; by withholding their pay and benefits; or by otherwise treating their purported terminations as effective. In addition, this Court should enter a briefing schedule on Plaintiffs' motion for a preliminary injunction to enable the motion to be resolved as soon as practicable.

Dated: May 21, 2025                                  Respectfully submitted,

                                                          /s/ Stephanie Garlock
Stephanie Garlock
(D. Md. Bar No. 31594)
Nicolas A. Sansone
(*pro hac vice* application pending)
Allison M. Zieve
(*pro hac vice* application pending)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiffs*

13