UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARY BOYLE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>*Defendants*. | Civil Action No. 8:25-cv-1628-MJM |

**DECLARATION OF MARY BOYLE**

I, Mary Boyle, declare as follows:

1. For nearly fifteen years, I have worked in senior positions across the Consumer Product Safety Commission (CPSC), including as Executive Director and General Counsel. In these roles, I worked on a broad range of issues, including policy, administration, litigation, product recalls, civil penalty negotiations, and the development of rules and regulations.

2. After CPSC Commissioner Ann Marie Buerkle stepped down in 2019, President Joseph R. Biden Jr. nominated me in 2021 to serve out the remainder of her seven-year term, which expires on October 27, 2025. The Senate confirmed my nomination on June 22, 2022, and I began serving as a CPSC Commissioner on June 30, 2022.

3. Under the Consumer Product Safety Act, if a successor to my position has not been confirmed prior to the expiration of my term on October 27, 2025, I may serve up to an additional year while awaiting the confirmation of a successor. I am not aware that a proposed successor has been nominated.

4. At no point during my service as a Commissioner has President Biden or President Donald J. Trump voiced dissatisfaction with the quality of my work or my dedication to the job. At no point have I been accused by the President of neglect of duty or malfeasance in office.

5. Following the inauguration of President Trump, the new administration announced a policy of reducing the size of the federal workforce. To effectuate this goal, the administration instituted a federal hiring freeze, offered the option of voluntary deferred resignation to federal workers, and acted through the newly created Department of Government Efficiency (DOGE) to initiate large-scale reductions in force (RIFs) across a wide range of federal agencies.

6. Because of the hiring freeze, reorganizations, and deferred-resignation program, virtually every department within the CPSC is understaffed; some are not functioning at all.

7. On February 26, 2025, the U.S. Office of Management and Budget and U.S. Office of Personnel Management issued a memorandum titled "Guidance on Agency RIF and Reorganization Plans Requested by *Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative*." The memorandum directed agency heads to develop and submit Agency RIF and Reorganization Plans (ARRPs) no later than March 13, 2025.

8. Acting Chairman of the CPSC, Peter A. Feldman, submitted two ARRPs in response to the memorandum. Both ARRPs suggest staff cuts and reorganizations that I believe to be counterproductive to the CPSC's mission of preventing consumer-product injuries and deaths. On April 10, after Acting Chairman Feldman submitted the second ARRP, I sent him

correspondence objecting to the proposed plans on multiple grounds. A true and correct copy of this letter is attached as Exhibit A.

9. Along with my fellow CPSC Commissioners Alexander Hoehn-Saric and Richard Trumka Jr., I expressed similar views in a May 2, 2025, letter to Acting Chairman Feldman. A true and correct copy of this letter is attached as Exhibit B.

10. In addition to these letters, I voiced my strong concerns about the staff reductions and reorganizations at the agency at a May 7, 2025, meeting of the Commission.

11. The following day, May 8, I received an email from Trent Morse, Deputy Director of Presidential Personnel. The body of the email stated, in its entirety: "On behalf of President Donald J. Trump, I am writing to inform you that your position on the Consumer Product Safety Commission is terminated effective immediately. Thank you for your service." A true and correct copy of the email is attached as Exhibit C.

12. Neither in the email nor at any other time has the President or anyone speaking on his behalf communicated to me that the reason for my termination is neglect of duty or malfeasance in office. And any attempt to invoke either of these rationales would have been entirely unjustified.

13. Since May 9, I have been unable to enter my office at the CPSC unescorted, access my CPSC email account, use my government-issued phone, log on to CPSC's computer network, or access any of my electronic files.

14. The only CPSC employee who reports to me, my chief counsel, attempted to enter my office suite on May 9. Her electronic access to the building had been cut off, however, and agency officials barred her entry. At that time, she was asked to turn over her government identification badge. She also received a termination notice stating that the person with

3

appointing authority for her position—which I understand to refer to myself—left the agency on May 9.

15. On May 15, I was escorted to my offices at CPSC headquarters to remove personal property and to return my CPSC identification badge, key fob, phone, credit card, and computer equipment to agency officials. My chief counsel entered her office under the escort of CPSC officials the following day, May 16, to retrieve her personal effects and return her government-issued phone and computer equipment.

16. It is my understanding that I will no longer receive the pay and benefits to which I am entitled as a CPSC Commissioner. On May 15, I was provided a "separation package" with information about when my health insurance would terminate, information on options to acquire continuing coverage, and other personnel matters associated with separation from the agency.

17. I take pride in my work as a CPSC Commissioner, and I believe that my work has played an important role in protecting consumers across the nation from injury and death. Every day that I am barred from fulfilling my duties as a Commissioner, I lose an irretrievable opportunity to do work that I believe is vital to the national interest and that is important to my own fulfillment. I also am prevented from participating in Commission proceedings through voting, debate with my fellow Commissioners, and engagement with staff, and as a result, my input is not being considered at a critical time for the future of the agency and the work that it does.

Executed this 20th day of May, 2025.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*Mary Boyle*
_____
Mary Boyle

# EXHIBIT A



UNITED STATES
CONSUMER PRODUCT SAFETY COMMISSION
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814
COMMISSIONER MARY T. BOYLE

April 10, 2025

Dear Acting Chair Feldman,

I write to formally object to the CPSC Agency RIF and Reorganization Plan, Phase II[1] that you drafted and intend to submit to the Office of Management and Budget and to the Office of Personnel Management. Your Plan does not represent my views. Additionally, the Plan was created without following the necessary process required for its authorization under CPSC statutes, directives, and procedures.

As the law makes clear, "[i]n carrying out any of his functions…the Chairman shall be governed by the general policies of the Commission." 15 U.S.C. section 2053(f)(2). The Commission has established policies and direction for staff through adoption of the FY2025 Operating Plan, approved unanimously on Nov. 6, 2024 to govern the current fiscal year. Last month, Congress appropriated funds at the Continuing Resolution level, which aligns with the budgetary direction set by the Operating Plan. To the extent that the RIF and Reorganization Plan you are now submitting deviates from the Commission-approved Plan—which it does substantially—such changes only can be effected by the Commission.

Our job as policymakers is to adhere to the mission Congress gave us: protecting consumers from dangerous products. As you correctly set forth on pages 10-11, the mechanisms for establishing Commission policies include the Strategic Plan, the Operating Plan, and the Mid-Year Review. Although I recognize that the statute instructs the Chairman of CPSC to exercise all the executive and administrative functions of the agency, those functions, as you acknowledge, are subject to the general policies of the Commission. Those policies are set by consensus of the bipartisan Commission, of which you are but one voice.

To the extent your policy preferences have evolved since you voted to approve the Operating Plan, you will have opportunities in the coming months to advance those positions. Indeed, the planning for FY2026 is already underway, and I look forward to receiving input from the public at the Agency Priorities Hearing scheduled for May 14.

---

[1] I object to the Phase I plan you submitted as well. I note that a copy of the Phase I Plan was provided to me by the CPSC Executive Director at 5:03 pm on March 13, 2025 with an accompanying email that stated he intended to transmit the document "this evening." I had no opportunity to review that Plan before it was submitted.

As the process for developing the FY2026 Operating Plan has already started, we will have ample opportunity to debate the issues raised by your RIF and Reorganization Plan—including your advocacy for the abolition of offices such as International Programs, Small Business Ombudsman, and Consumer Ombudsman—through established Commission protocols. Prior to that time, any unilateral changes you make absent Commission approval would be unauthorized.

Again, I object to the RIF and Reorganization Plans you drafted—Phase I and II—on both procedural and policy grounds.

Sincerely,

*Mary T. Boyle*

Mary T. Boyle
Commissioner

# EXHIBIT B



# UNITED STATES
## CONSUMER PRODUCT SAFETY COMMISSION
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

**May 2, 2025**

**BY EMAIL AND HAND DELIVERY**
Peter Feldman, Acting Chairman
Consumer Product Safety Commission

Dear Acting Chairman Feldman:

Last month, the Congress passed, and the President signed into law an appropriations bill that provides $150 million to the Consumer Product Safety Commission ("CPSC") for Fiscal Year ("FY") 2025. This funding level allows the agency to continue at current staffing levels and, but for an unnecessary hiring freeze imposed by the White House, it would allow CPSC to fill critical gaps in staffing.

In response to the Administration's Joint OMB-OPM Memorandum *"Guidance on Agency RIF and Reorganization Plans Requested* by *Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative,"* you submitted two "Agency Reorganization and RIF Plans" ("ARRPs") to the White House, both of which propose staff cuts and reorganizations that are unnecessary and counterproductive to the agency's mission. We believe that the proposed staff cuts would make CPSC less effective and increase the risk to the public of consumer product injuries and deaths. We object to these unnecessary actions.

CPSC currently has about 500 staff (down from a recent high of 574 in FY23) who monitor approximately $2 trillion in consumer product commerce annually, including about $1 trillion in imports. That being said, our true staffing is closer to 475 – a nearly 20 percent cut in less than two years – because approximately 25 employees are currently being paid but are not working after accepting the Trump Administration's "fork in the road" offer. Virtually every department is understaffed and some are functionally closed as a result of these shortages

While the White House may seek further reductions in staffing, we can't afford to lose any more employees. We fear that further reductions will undermine CPSC's compliance, inspection, scientific, and education efforts. Already, our diminished capacity is slowing our work, and deaths and injuries that might be prevented will likely occur.

Moreover, some of the proposed personnel changes may violate employees' rights under their collective bargaining agreements or violate merit system principles. Before any personnel actions are taken pursuant to the ARRP or other Administration direction, we urge the General Counsel's office to ensure compliance with all civil service laws and ensure at least 30 days' notice is given to the union that

represents CPSC staff. The union also should have the opportunity to have any concerns resolved consistent with their bargaining agreement.

Through the mid-year process scheduled in May, the Commission will consider and debate changes to agency policy and staffing for the rest of the year. Pending this review, efforts to terminate employees or reorganize the agency as laid out in the ARRP would violate the terms of the FY 25 operating plan and are not supported by a majority of the Commission.

Finally, in response to the Administration's OPM Memorandum *"Guidance on Implementing President Trump's Executive Order titled, 'Restoring Accountability To Policy-Influencing Positions Within the Federal Workforce'"* you submitted a request to undermine civil service protections from 72 vital positions in our agency. A majority of Commissioners object to this request and to any attempt to politicize the work of this agency.

We urge you not to take any actions that would diminish our agency's most valuable asset: our staff.

Respectfully,

_____
Alexander Hoehn-Saric
Commissioner
Consumer Product Safety Commission

_____
Richard Trumka Jr.
Commissioner
Consumer Product Safety Commission

_____
Mary T. Boyle
Commissioner
Consumer Product Safety Commission

# EXHIBIT C

**Boyle, Mary**  Fri, May 9, 7:02 AM (1 day ago)

to me

Sent from my iPhone

Begin forwarded message:

**From:** "Morse, Trent M. EOP/WHO" <Trent.M.Morse@who.eop.gov>
**Date:** May 8, 2025 at 6:48:05 PM EDT
**To:** "Boyle, Mary" <MBoyle@cpsc.gov>
**Subject: Message from PPO**

Mary,

On behalf of President Donald J. Trump, I am writing to inform you that your position on the Consumer Product Safety Commission is terminated effective immediately.

Thank you for your service.

Trent Morse

Deputy Director

Presidential Personnel