UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARY BOYLE, et al., *Plaintiffs*, v. DONALD J. TRUMP, in his official capacity as President of the United States, et al., *Defendants*. | Civil Action No. 8:25-cv-1628-MJM |

### DECLARATION OF ALEXANDER HOEHN-SARIC

I, Alexander Hoehn-Saric, declare as follows:

1. Throughout my career, I have worked extensively in the field of consumer protection. Among other things, I have worked on the U.S. Senate subcommittee responsible for overseeing the Consumer Product Safety Commission (CPSC) and have served as Chief Counsel for Communications and Consumer Protection with the U.S. House of Representatives Committee on Energy and Commerce.

2. After CPSC Commissioner Elliot F. Kaye stepped down in 2021, President Joseph R. Biden Jr. nominated me to serve out the remainder of his seven-year term, which expires on October 27, 2027. The Senate confirmed my nomination on October 7, 2021, and I began serving as a CPSC Commissioner on October 13, 2021.

3. Under the Consumer Product Safety Act, if a successor to my position has not been confirmed prior to the expiration of my term on October 27, 2027, I may serve up to an additional year while awaiting the confirmation of a successor. I am not aware that a proposed successor has been nominated.

4. At no point during my service as a Commissioner has President Biden or President Donald J. Trump voiced dissatisfaction with the quality of my work or my dedication to the job. At no point have I been accused by the President of neglect of duty or malfeasance in office.

5. Following the inauguration of President Trump, the new administration announced a policy of reducing the size of the federal workforce. To effectuate this goal, the administration instituted a federal hiring freeze, offered the option of voluntary deferred resignation to federal workers, and acted through the newly created Department of Government Efficiency (DOGE) to initiate large-scale reductions in force (RIFs) across a wide range of federal agencies.

6. Because of the hiring freeze, reorganizations, and deferred-resignation program, virtually every department within the CPSC is understaffed; some are not functioning at all.

7. On February 26, 2025, the U.S. Office of Management and Budget and U.S. Office of Personnel Management issued a memorandum titled "Guidance on Agency RIF and Reorganization Plans Requested by *Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative*." The memorandum directed agency heads to develop and submit Agency RIF and Reorganization Plans (ARRPs) no later than March 13, 2025.

8. Acting Chairman of the CPSC, Peter A. Feldman, submitted two ARRPs in response to the memorandum. Both ARRPs suggest staff cuts and reorganizations that I believe to be counterproductive to the CPSC's mission of preventing consumer-product injuries and deaths. Along with my fellow CPSC Commissioners Mary Boyle and Richard Trumka Jr., I expressed these views in a May 2, 2025, letter to Acting Chairman Feldman. A true and correct copy of this letter is attached as Exhibit B to the Declaration of Mary Boyle.

9. In addition to the letter, I voiced my strong concerns about the staff reductions and reorganizations at the agency at a May 7, 2025, meeting of the Commission.

10. Two days later, on May 9, when two members of my staff and I arrived at work, CPSC security prevented us from proceeding to our offices and required us to wait in the lobby. I made multiple attempts to call Acting Chairman Feldman. After about an hour, Acting Chairman Feldman called me and informed me that the President had terminated me from my role as CPSC Commissioner and that I should leave the premises.

11. Neither on that phone call nor at any other time has Acting Chairman Feldman or anyone purporting to speak on the President's behalf communicated to me that the reason for my termination is neglect of duty or malfeasance in office. And any attempt to invoke either of these rationales would have been entirely unjustified.

12. Since May 9, I have been unable to enter my office at the CPSC unescorted, access my CPSC email account, use my government-issued phone, log on to CPSC's computer network, or access any of my electronic files. On May 15, I was escorted to my offices at CPSC headquarters to remove personal property and to return my CPSC identification badge, key fob, phone, credit card, and computer equipment to agency officials.

13. Members of my staff have received termination notices stating that the person with appointing authority for their positions—which I understand to refer to myself—left the agency on May 9. They have been unable to enter their offices unescorted, access their CPSC email accounts, use their government-issued phones, log on to CPSC's computer network, or access their CPSC electronic files.

14. It is my understanding that I will no longer receive the pay and benefits to which I am entitled as a CPSC Commissioner. On May 15, I was provided a "separation package" with information about personnel matters associated with separation from the agency.

15. I take pride in my work as a CPSC Commissioner, and I believe that my work has played an important role in protecting consumers across the nation from injury and death. Every day that I am barred from fulfilling my duties as a Commissioner, I lose an irretrievable opportunity to do work that I believe is vital to the national interest and that is important to my own fulfillment. I also am prevented from participating in Commission proceedings through voting, debate with my fellow Commissioners, and engagement with staff, and as a result, my input is not being considered at a critical time for the future of the agency and the work that it does. Executed this 20th day of May, 2025.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Alexander Hoehn-Saric