**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARY BOYLE, et al.,

　　　　*Plaintiffs*,

　　　　　v.

DONALD J. TRUMP, in his official
capacity as President of the United
States, et al.,

　　　　*Defendants*.

Civil Action No. 8:25-cv-1628-MJM

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
EXPEDITED MOTION FOR SUMMARY JUDGMENT**

Stephanie Garlock
(D. Md. Bar No. 31594)
Nicolas A. Sansone
(admitted *pro hac vice*)
Allison M. Zieve
(admitted *pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

Legal Background ..................................................................................................................... 2

Factual Background .................................................................................................................. 3

LEGAL STANDARD ................................................................................................................ 5

ARGUMENT ............................................................................................................................. 6

I.    Plaintiffs are entitled to summary judgment. .................................................................... 6

II.   Equitable relief is warranted. ......................................................................................... 14

CONCLUSION ........................................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Allen v. Autauga County Board of Education,*
    685 F.2d 1302 (11th Cir. 1982) ................................................................................ 16

*American School of Magnetic Healing v. McAnnulty,*
    187 U.S. 94 (1902)..................................................................................................... 20

*Athlone Industries, Inc. v. Consumer Product Safety Commission,*
    707 F.2d 1485 (D.C. Cir. 1983) ............................................................................... 12

*Bauer v. Summey,*
    568 F. Supp. 3d 573 (D.S.C. 2021) ......................................................................... 15

*Burns v. General Accounting Office Employees Federal Credit Union,*
    1988 WL 134925 (D.D.C. Dec. 2, 1988).................................................................. 16

*City of Arlington v. Federal Communications Commission,*
    569 U.S. 290 (2013)................................................................................................... 10

*Collins v. Yellen,*
    594 U.S. 220 (2021)................................................................................................... 11

*Consumers' Research v. Consumer Product Safety Commission,*
    91 F.4th 342 (5th Cir. 2024) ..................................................................................... 13

*Cook v. Arentzen,*
    1977 WL 4327 (4th Cir. 1977) ................................................................................. 16

*Davis v. Billington,*
    76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................................. 16

*Delgado v. Chavez,*
    140 U.S. 586 (1891)............................................................................................. 19, 20

*Dellinger v. Bessent,*
    — F. Supp. 3d —, 2025 WL 471022 (D.D.C. Feb. 12, 2025)................................... 14

*Equal Employment Opportunity Commission v. City of Janesville,*
    630 F.2d 1254 (7th Cir. 1980) .................................................................................. 15

*Farris v. Rice,*
    453 F. Supp. 76 (D.D.C. 2006) ................................................................................ 16

*Franklin v. County School Board of Giles County,*
    360 F.2d 325 (4th Cir. 1966) .................................................................................... 16

*Franks v. Nimmo*,
    683 F.2d 1290 (10th Cir. 1982) ............................................................... 15

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
    561 U.S. 477 (2010) ................................................................................. 10

*Grundmann v. Trump*,
    — F. Supp. 3d —, 2025 WL 782665 (D.D.C. Mar. 12, 2025) ........................ 15, 20

*Hetreed v. Allstate Insurance Co.*,
    135 F.3d 1155 (7th Cir. 1998) ................................................................. 15

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ........................................................................... passim

*Hunter v. Town of Mocksville*,
    897 F.3d 538 (4th Cir. 2018) ................................................................... 16

*In re Sawyer*,
    124 U.S. 200 (1888) ........................................................................... 20, 21

*League of Women Voters of the United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..................................................................... 17

*LeBlanc v. U.S. Privacy & Civil Liberties Oversight Board*,
    — F. Supp. 3d —, 2025 WL 1454010 (D.D.C. May 21, 2025) ..................... 15

*Levesque v. Maine*,
    587 F.2d 78 (1st Cir. 1978) ..................................................................... 15

*Magnetsafety.org v. Consumer Product Safety Commission*,
    129 F.4th 1253 (10th Cir. 2025) ............................................................. 13

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ............................................................... 15, 19

*Marxe v. Jackson*,
    833 F.2d 1121 (3d Cir. 1987) ................................................................. 15

*Mayor of Baltimore v. Azar*,
    973 F.3d 258 (4th Cir. 2020) ................................................................... 6

*Morrison v. Olson*,
    487 U.S. 654 (1988) ................................................................................. 10

*Newman v. United States ex rel. Frizzell*,
    238 U.S. 537 (1915) ................................................................................. 19

*Nichols v. Agency for International Development*,
   18 F. Supp. 2d 1 (D.D.C. 1998) ........................................................... 16

*Rankin v. McPherson*,
   483 U.S. 378 (1987) ............................................................................. 16

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ............................................................................... 18

*Rubino v. City of Mt. Vernon*,
   707 F.2d 53 (2d Cir. 1983) ................................................................... 15

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................... 15

*Sedar v. Reston Town Center Property, LLC*,
   988 F.3d 756 (4th Cir. 2021) ................................................................. 6

*Seila Law LLC v. Consumer Financial Protection Bureau*,
   591 U.S. 197 (2020) ............................................................. 8, 9, 10, 11

*Trump v. Wilcox*,
   2025 WL 1464804 (U.S. May 22, 2025) ........................................ 12, 19

*United States v. SunSetter Products LP*,
   2024 WL 1116062 (D. Mass. Mar. 14, 2024) ....................................... 13

*USA Farm Labor, Inc. v. Micone*,
   2025 WL 586339 (4th Cir. Feb. 24, 2025) ........................................... 17

*Wilcox v. Trump*,
   — F. Supp. 3d —, 2025 WL 720914 (D.D.C. Mar. 6, 2025) ................ 15

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ............................................................................. 20

*Zukerman v. U.S. Postal Service*,
   64 F.4th 1354 (D.C. Cir. 2023) .............................................................. 6

**Statutes**

15 U.S.C. § 41 ............................................................................................ 8

15 U.S.C. § 46(g) ....................................................................................... 9

15 U.S.C. § 2051(b)(1) ............................................................................... 2

15 U.S.C. § 2051(b)(2) ............................................................................... 2

15 U.S.C. § 2053(a) ................................................................................................ passim

15 U.S.C. § 2053(b)(1) ..................................................................................................... 2

15 U.S.C. § 2053(b)(2) .................................................................................................. 2, 3

15 U.S.C. § 2053(c) ...................................................................................................... 3, 8

15 U.S.C. § 2056 ............................................................................................................... 2

15 U.S.C. § 2056(a) .......................................................................................................... 9

15 U.S.C. § 2057 ............................................................................................................... 2

15 U.S.C. § 2064(c) .......................................................................................................... 9

15 U.S.C. § 2064(d) .......................................................................................................... 9

15 U.S.C. § 2076 ........................................................................................................... 2, 9

15 U.S.C. § 2076(b)(7)(B) ............................................................................................. 13

28 U.S.C. § 1361 ............................................................................................................. 21

Federal Trade Commission Act, Pub. L. No. 63-203, 38 Stat. 717 (1914) ........................ 9, 12, 13

**Other Authorities**

122 Cong. Rec. S15211 (daily ed. May 24, 1976) ............................................................ 2

**Rules**

Federal Rule of Civil Procedure 56(a) ............................................................................. 5

## INTRODUCTION

More than fifty years ago, Congress created the Consumer Product Safety Commission (CPSC)—a multimember body of nonpartisan experts responsible for protecting Americans from the threat of injury and death presented by hazardous consumer products. To ensure that the CPSC's important work remains independent and free from outside pressure, Congress provided that CPSC Commissioners may be removed from office before the expiration of their terms "for neglect of duty or malfeasance in office but for no other cause." 15 U.S.C. § 2053(a).

Acting in direct contravention of this legislative command, President Donald J. Trump has purported to terminate three of the five sitting CPSC Commissioners—Plaintiffs Mary Boyle, Alexander Hoehn-Saric, and Richard Trumka Jr. None of the three has engaged in, nor is alleged to have engaged in, any neglect of duty or malfeasance in office. The undisputed facts plainly establish that Plaintiffs' terminations violated their statutory for-cause removal protections, and under the binding precedent of *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), these protections are constitutional. Plaintiffs are accordingly entitled to summary judgment. As a remedy, Plaintiffs are entitled to a declaration that their terminations were unlawful and to an injunction barring Defendants Secretary of the Treasury Scott Bessent, Director of the Office of Management and Budget Russell Vought, and Acting Chairman of the CPSC Peter A. Feldman from giving effect to those unlawful terminations.

This Court should grant summary judgment for Plaintiffs and enter the requested declaratory and injunctive relief without delay, so that Commissioners Boyle, Hoehn-Saric, and Trumka can get back to work protecting the American people from injury and death.

1

# BACKGROUND

**Legal Background**

In the 1972 Consumer Product Safety Act (CPSA), Pub. L. No. 92-573, 86 Stat. 1207, Congress created the CPSC to advance the Act's goals, which include "protect[ing] the public against unreasonable risks of injury associated with consumer products" and "assist[ing] consumers in evaluating the comparative safety of consumer products." 15 U.S.C. §§ 2051(b)(1)– (2). As established by statute, the CPSC consists of five Commissioners who are nominated by the President and confirmed by the Senate, and each Commissioner must hold "background and expertise in areas related to consumer products and protection of the public from risks to safety." *Id.* § 2053(a). Among other things, Commissioners are responsible for promulgating standards for consumer-product safety, *id.* § 2056, recalling unreasonably hazardous products from the market, *id.* § 2057, and conducting product-safety investigations and research, *id.* § 2076.

To ensure that the CPSC remains an expert body that is "unfettered by political dictates, self-interested industry pressure or blind consumer zeal," 122 Cong. Rec. S15211 (daily ed. May 24, 1976), Congress established it as an "independent regulatory commission," 15 U.S.C. § 2053(a), and erected statutory guardrails to protect the CPSC from undue political pressures. Congress ensured that each President would have the opportunity to influence, but not control, the composition of the CPSC by providing that the Commissioners would serve staggered, seven-year terms, *id.* § 2053(b)(1), and that any Commissioner who was appointed to fill a vacancy created by the premature departure of a predecessor would be appointed only for the remainder of the predecessor's term, *id.* § 2053(b)(2). *See also id.* (authorizing a Commissioner appointed in this way to "continue to serve after the expiration of this term until his successor has taken office" for up to a maximum of one year). Congress also provided that "[n]ot more than three of the

Commissioners shall be affiliated with the same political party." *Id.* § 2053(c). And, critical here, Congress provided that Commissioners may be "removed by the President" before the end of their terms only "for neglect of duty or malfeasance in office but for no other cause." *Id.* § 2053(a).

**Factual Background**

Plaintiffs Mary Boyle, Alexander Hoehn-Saric, and Richard Trumka Jr. all have extensive professional backgrounds in consumer-protection issues, and each of them was nominated by President Joseph R. Biden Jr. and confirmed by the Senate to serve as a CPSC Commissioner. Pls.' Statement of Facts ¶ 1. Commissioner Boyle was confirmed on June 22, 2022, to serve out the remainder of a predecessor's term, set to expire on October 27, 2025, *id.* ¶ 2, although she may continue to serve until October 27, 2026, if a successor is not installed before that time. 15 U.S.C. § 2053(b)(2). Commissioner Hoehn-Saric was confirmed on October 7, 2021, to serve out the remainder of a predecessor's term, set to expire on October 27, 2027, Pls.' Statement of Facts ¶ 3, although he may continue to serve until October 27, 2028, if a successor is not installed before that time. 15 U.S.C. § 2053(b)(2). And Commissioner Trumka was confirmed on November 16, 2021, to serve a seven-year term that expires on October 27, 2028. Pls.' Statement of Facts ¶ 4.

Plaintiffs have performed ably in their roles and have never been accused by either of the Presidents under whom they have served of neglect of duty or malfeasance in office. *Id.* ¶ 5. Each Plaintiff takes pride in his or her work as a CPSC Commissioner and believes that his or her work has played an important role in protecting consumers from injury and death. Boyle Decl., ECF 6-2, ¶ 17; Hoehn-Saric Decl., ECF 6-3, ¶ 15; Trumka Decl., ECF 6-4, ¶ 14.

On May 8, 2025, Commissioners Boyle and Trumka received emails from Trent Morse, Deputy Director of Presidential Personnel, the bodies of which stated, in full: "On behalf of President Donald J. Trump, I am writing to inform you that your position on the Consumer Product

Safety Commission is terminated effective immediately. Thank you for your service." Pls.'
Statement of Facts ¶¶ 6–7. On the following day, May 9, Commissioner Hoehn-Saric and two of
his staff members reported to work at CPSC headquarters but were barred by CPSC security from
entering their offices. *Id.* ¶ 9. Commissioner Hoehn-Saric waited in the lobby for about an hour,
making multiple attempts to reach Acting Chairman Feldman by phone. Hoehn-Saric Decl. ¶ 10.
Eventually, Acting Chairman Feldman called Commissioner Hoehn-Saric and informed him that
the President had terminated him from his role as CPSC Commissioner and that he should leave
the premises. Pls.' Statement of Facts ¶ 10. At no point was neglect of duty or malfeasance in
office cited as a reason for the termination of any Plaintiff. *Id.* ¶¶ 8, 11–12.

Since May 9, Plaintiffs have been unable to enter their offices at CPSC unescorted, access
their CPSC email accounts, use their government-issued phones, log on to CPSC's computer
network, or access any of their electronic files. *Id.* ¶ 13. Plaintiffs have been made to return their
CPSC identification badges, keys, phones, credit cards, and computer equipment, and Plaintiffs'
staff members have received termination notices that cite Plaintiffs' terminations as their basis. *Id.*
¶ 14. Plaintiffs, meanwhile, have received "separation packages" and understand that they will no
longer be receiving the pay and benefits to which CPSC Commissioners are entitled. *Id.* ¶ 15.

As long as they are barred from performing their functions as Commissioners, Plaintiffs
are unable to participate in consequential decisions that will have a substantial impact on consumer
safety and the future of the CPSC. *Id.* ¶ 16. For example, Acting Chairman Feldman has proposed
plans for reductions in force (RIFs) and agency reorganizations that Plaintiffs believe will
exacerbate existing understaffing problems and compromise the CPSC's ability to function. *Id.*
¶ 17. Plaintiffs would vote against these plans, but because they are unable to vote as a result of
their unlawful terminations, Acting Chairman Feldman will be able to implement the plans. *Id.*

¶¶ 18–19. Furthermore, over the three weeks in which the CPSC has been operating without Plaintiffs' participation, the agency has stalled the progress of product-safety rules that Plaintiffs believe are necessary to protect the public, *id.* ¶¶ 23–24, 27–28, canceled budgetary and planning meetings that Plaintiffs view as important, *id.* ¶ 29, voted to withdraw a Notice of Proposed Rulemaking for safety standards that Plaintiffs had supported, *id.* ¶ 24, and moved to prioritize the interests of industry over the agency's core mission of protecting consumer safety, *id.* ¶¶ 25–26. Plaintiffs would have opposed all of these developments if given the opportunity. *Id.* ¶¶ 18, 22, 24, 26. Instead, they have been compelled to watch from the sidelines as an agency in which they hold a deep, personal stake evolves in ways they see as dangerous and counter to the public interest.

On May 21, Plaintiffs filed this lawsuit against President Trump, Secretary Bessent, Director Vought, and Acting Chairman Feldman in their official capacities. Plaintiffs allege that President Trump acted ultra vires and in violation of the CPSA by terminating them absent neglect of duty or malfeasance in office and that Defendants Bessent, Vought, and Feldman acted ultra vires and in violation of the CPSA by taking action to effectuate their terminations, including by obstructing their access to CPSC staff and resources and by withholding their pay and benefits.

To preserve the last uncontested status quo between the parties during the pendency of this litigation, Plaintiffs moved for a temporary restraining order (TRO) and preliminary injunction a few hours after filing suit. This Court denied Plaintiffs' TRO motion in an oral ruling on May 27. The Court then set a schedule for expedited briefing on a motion for summary judgment.

## LEGAL STANDARD

Summary judgment "shall" be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for summary-judgment purposes "if proof of its existence or

non-existence would affect disposition of the case under applicable law," and a factual dispute is "genuine" if the evidence "is such that a reasonable jury might return a verdict for the non-movant." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Wai Man Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

Where the relief sought includes a permanent injunction, a party that has established success on the merits must additionally demonstrate that "(1) 'it has suffered an irreparable injury'; (2) 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury'; (3) 'considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted'; and (4) 'the public interest would not be disserved by a permanent injunction.'" *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (en banc) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). In cases against the government, the inquiries into the balance of hardships and the public interest merge. *See Zukerman v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023).

## ARGUMENT

### I.    Plaintiffs are entitled to summary judgment.

The CPSA unambiguously provides that CPSC Commissioners may be "removed by the President for neglect of duty or malfeasance in office but for no other cause." 15 U.S.C. § 2053(a). It is undisputed that all three Plaintiffs were validly appointed as CPSC Commissioners, Pls.' Statement of Facts ¶ 1, that the President has purported to remove each of them from office prior to the expiration of their terms, *id.* ¶¶ 6–7, 10, and that no neglect of duty or malfeasance in office has been alleged—or credibly could be alleged—as justification, *id.* ¶¶ 5, 8, 11–12. Plaintiffs' purported terminations thus violate the CPSA.

Indeed, Defendants have not disputed that Plaintiffs' terminations violated the CPSA. *See* TRO Opp., ECF 15, at 3 (stating that "each Commissioner enjoys removal protection" and citing 15 U.S.C. § 2053(a)). They maintain, however, that the CPSA's for-cause removal protections violate the U.S. Constitution by unlawfully encroaching on the President's authority to oversee the executive branch. *Id.* at 7–8. Defendants acknowledge, as they must, that *Humphrey's Executor* establishes an "exception[] to the President's unrestricted removal power," *id.* at 8 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020)), and that "*Humphrey's Executor* remains good law," *id.* at 12. But they argue that this exception does not apply to the CPSC.

*Humphrey's Executor*, though, applies foursquare to the removal protections that Congress extended to the CPSC Commissioners and establishes that those protections are lawful. In that case, the Supreme Court unanimously upheld the constitutionality of a statutory provision that barred the President from removing the members of the Federal Trade Commission (FTC) except for "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 619 (quoting 15 U.S.C. § 41); *see id.* at 631–32. As the Court held, "[t]he authority of Congress, in creating quasi legislative or quasi judicial agencies, to require them to act in discharge of their duties independently of executive control cannot well be doubted." *Id.* at 629. In the case of "an administrative body created by Congress to carry into effect legislative policies embodied in [a] statute in accordance with the legislative standard therein prescribed," *id.* at 628, the Court found it "plain under the Constitution that illimitable power of removal is not possessed by the President," *id.* at 629. *See id.* (observing that Congress has "power to fix the period during which" the members of such bodies "shall continue, and to forbid their removal except for cause in the meantime," so as to allow them to "maintain an attitude of independence against the [President's] will").

More recently, in *Seila Law*, the Supreme Court declined to extend the holding of *Humphrey's Executor* to the Consumer Financial Protection Bureau (CFPB), an agency headed by a single director. *See Seila Law*, 591 U.S. at 218. As the Court emphasized, the FTC is "a multimember body of experts, balanced along partisan lines, that perform[s] legislative and judicial functions," *id.* at 216, whereas the CFPB's "single Director … cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle," *id.* at 218 (quoting *Humphrey's Executor*, 295 U.S. at 624). *See* 15 U.S.C. § 41 (providing that "[n]ot more than three of the [FTC] Commissioners shall be members of the same political party"). The Court emphasized the dearth of historical instances in which Congress has extended for-cause removal protections to "principal officers who wield power alone rather than as members of a board or commission," *Seila Law*, 591 U.S. at 220, and concluded that "[t]he CFPB's single-Director structure [was] an innovation with no foothold in history or tradition," *id.* at 222. And the Court further observed that "the CFPB's single-Director configuration [was] incompatible with our constitutional structure," which "scrupulously avoids concentrating power in the hands of any single individual." *Id.* at 222–23; *see id.* at 224 (faulting "[t]he CFPB's single-Director structure" for "vesting significant governmental power in the hands of a single individual"). In light of these considerations, the Court held that "the CFPB's leadership by a single independent Director violates the separation of powers." *Id.* at 232 (plurality opinion).

*Seila Law* reinforces that *Humphrey's Executor* controls this case. Like the FTC, the CPSC is "a multimember body of experts, balanced along partisan lines." *Id.* at 216; *see* 15 U.S.C. § 2053(a) (providing that the CPSC shall "consist[] of five Commissioners" who hold "background and expertise in areas related to consumer products and protection of the public from risks to safety"); *id.* § 2053(c) (providing that "[n]ot more than three of the [CPSC] Commissioners

shall be affiliated with the same political party"). And like the FTC, the CPSC performs "quasi legislative and quasi judicial" functions. *Humphrey's Executor*, 295 U.S. at 629. On the legislative side, the FTC and CPSC both hold "wide powers of investigation," *id.* at 621 (FTC); 15 U.S.C. § 2076 (CPSC), and the authority to issue substantive regulations. *Compare* Federal Trade Commission Act, Pub. L. No. 63-203, § 6(g), 38 Stat. 717, 722 (1914), *codified as amended at* 15 U.S.C. § 46(g), *with* 15 U.S.C. § 2056(a) (empowering the CPSC to promulgate "consumer product safety standards"). On the judicial side, the FTC and CPSC both hold authority to conduct administrative adjudications within the narrow confines of the statutes that they administer. *Compare Humphrey's Executor*, 295 U.S. at 620–21 (describing the FTC's power to issue a cease-and-desist order upon finding that a party has engaged in an unfair method of competition), *with* 15 U.S.C. §§ 2064(c)–(d) (authorizing the CPSC to order remedial measures upon finding a substantial product hazard). Meanwhile, unlike the CFPB, the CPSC does not have a historically anomalous structure, *cf. Seila Law* 591 U.S. at 230 (noting the existence of "some two-dozen multimember independent agencies"), or one that lets any individual "*unilaterally*" perform executive functions, *id.* at 225 (emphasis in original).

Overlooking the close similarities between the CPSC and the FTC as discussed in *Humphrey's Executor* and as distinguished in *Seila Law*, Defendants minimize the "novel context" that led *Seila Law* to depart from *Humphrey's Executor*: "an independent agency *led by a single Director*." *Id.* at 204 (emphasis added); *see id.* (recognizing that, under *Humphrey's Executor*, "Congress c[an] create expert agencies led by a *group* of principal officers removable by the President only for good cause" (emphasis in original)). Instead, Defendants place dispositive weight on a single sentence in *Seila Law* that describes *Humphrey's Executor* as applying to "multimember expert agencies that do not wield substantial executive power." *Id.* at 218; *see* TRO

Opp. 10. Reading this sentence as holding that an agency's inability to wield substantial executive power is an "element[] that [is] required for the *Humphrey's Executor* exception to apply," TRO Opp. 10, Defendants characterize the CPSC's powers as "significant," *id.* at 7, and argue that the CPSC therefore falls outside the scope of that precedent. Defendants are wrong for many reasons.

First, to the extent that Defendants suggest that *Humphrey's Executor* applies only to independent agencies that do "not … exercis[e] executive power *at all*," *id.* at 9 (emphasis added), their argument would render the holding of *Humphrey's Executor* inapplicable to *any* administrative agencies—including the FTC. *See Morrison v. Olson*, 487 U.S. 654, 689 n.28 (1988) ("[T]he powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree."). As the Supreme Court has observed, although agency actions "take 'legislative' and 'judicial' forms, … they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (quoting U.S. Const. art. II, § 1, cl. 1). Accordingly, despite the statement in *Humphrey's Executor* that the FTC "exercises no part of the executive power," 295 U.S. at 628, the Court has disavowed that characterization, observing that it "has not withstood the test of time." *Seila Law*, 591 U.S. at 216 n.2. Nonetheless, rather than repudiating *Humphrey's Executor*, the Court has understood *Humphrey's Executor* to create an "exception[]" to the President's "power to remove … those who wield *executive* power on his behalf." *Id.* at 204 (emphasis added); *see Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495 (2010) (describing *Humphrey's Executor* as involving "protected tenure separat[ing] the President from an officer exercising executive power"). Thus, that the CPSC is an executive agency, as that term is used today, does not bring it outside the scope of *Humphrey's Executor*.

Second, Defendants' contention that a multimember agency cannot fall within *Humphrey's Executor*'s exception to the President's removal authority if the agency exercises executive power that can be characterized as "substantial," TRO Opp. 10, misreads *Seila Law*. Although *Seila Law*, in holding that the removal restriction on the CFPB's single director was unconstitutional, observed that the director exercised "significant executive power," 591 U.S. at 220, the Court was clear that the exercise of such power created a constitutional problem for an independent director "*acting alone*," *id.* at 238 (emphasis added). The Court did not hold that a *multimember* independent body could not lawfully exercise the level of authority possessed by the CFPB Director. In fact, it said the opposite. In its discussion of remedy, the Court stated that the remedy that it ordered (severance and invalidation of the Director's for-cause removal protection) did not "foreclose Congress from pursuing alternative responses to the [constitutional] problem—for example, converting the CFPB into a multimember agency." *Id.* at 237 (plurality opinion).[1]

If *Seila Law* itself were not clear enough, the Court just one year later rejected the idea that the constitutionality of an agency's for-cause removal protections depends on the substantiality of the powers the agency exercises. *See Collins v. Yellen*, 594 U.S. 220, 251 (2021) (rejecting the argument that Congress "should have greater leeway to restrict the President's power to remove" the head of a single-director independent agency whose "authority [was] more limited than that of the CFPB [Director]"). As *Collins* recognized, "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." *Id.* at 253.

---

[1] Although only a plurality of Justices joined this portion of *Seila Law*, four dissenting Justices would have upheld the CFPB Director's statutory removal protections as consistent with the Constitution. Necessarily, those Justices would also discern no constitutional flaw with an independent multimember body that exercised the Director's powers.

Indeed, the Supreme Court reinforced this principle last week. In *Trump v. Wilcox*, 2025 WL 1464804 (U.S. May 22, 2025), the Court found the government was "likely to show" that two multimember independent agencies "exercise[d] considerable executive power," but it nonetheless held that a "recognized exception" to the President's at-will removal authority—plainly referring to *Humphrey's Executor*—may apply. *Id.* at *1. To the extent that *Wilcox*'s three-sentence discussion of the merits offers guidance, it thus counsels rejecting Defendants' argument that an agency's exercise of significant executive power forecloses application of *Humphrey's Executor*.

Third, on any understanding of *Seila Law*'s reference to "substantial" executive power, the "substantiality" that an independent agency's executive power must reach before *Humphrey's Executive* even arguably no longer applies must necessarily exceed the level of executive power that the FTC held at the time that the Court decided *Humphrey's Executor*. The CPSC's powers, though, closely resemble the powers considered in *Humphrey's Executor*. *See supra* pp. 8–9.

Attempting to distinguish the CPSC's powers from those of the 1935 FTC, Defendants have pointed to the CPSC's authority to promulgate product-safety standards. *See* TRO Opp. 10 (citing 15 U.S.C. § 2056(a)). The 1935 FTC, however, also had authority to "make rules and regulations" to carry out its statutory mandate. Federal Trade Commission Act, Pub. L. No. 63-203, § 6(g), 38 Stat. 717, 722 (1914), *codified as amended at* 15 U.S.C. § 46(g). Defendants have also noted the CPSC's authority to conduct administrative adjudications, *see* TRO Opp. 11 (citing 15 U.S.C. § 2076(a)), but the 1935 FTC had the same power.[2] *See Humphrey's Executor*, 295 U.S.

---

[2] Defendants are wrong that the CPSC's administrative adjudications can "carry[] serious civil penalties." TRO Opp. 11. The CPSC has long acquiesced in decades-old judicial rulings that it lacks statutory authority to impose civil penalties in administrative adjudications. *See, e.g.*, *Athlone Indus., Inc. v. CPSC*, 707 F.2d 1485, 1492 (D.C. Cir. 1983) ("[W]e conclude, as did the Eighth Circuit, that the Commission lacks the authority to assess civil penalties in an administrative proceeding.").

at 620–21 (describing the FTC's authority to "issue a complaint," conduct a hearing, make "findings as to the facts," and "issue and cause to be served" a judicially enforceable cease-and-desist order). Defendants have further cited the CPSC's power to "bring[] both civil and criminal actions in federal court." TRO Opp. 11. As to civil enforcement authority, though, the CPSC's powers are analogous to those of the 1935 FTC. *See Humphrey's Executor*, 295 U.S. at 620 (noting that the FTC may "apply to the appropriate Circuit Court of Appeals" for civil enforcement). As to criminal enforcement, the CPSC cannot act without "the concurrence of the Attorney General," 15 U.S.C. § 2076(b)(7)(B), who is indisputably subject to presidential removal. Finally, although the CPSC can issue and enforce subpoenas, *see* TRO Opp. 11 (citing 15 U.S.C. §§ 2076(b)(3), (c)), the 1935 FTC possessed this same authority. *See* Federal Trade Commission Act, Pub. L. No. 63-203, § 9, 38 Stat. 717, 722 (1914), *codified as amended at* 15 U.S.C. § 49 ("[T]he [FTC] shall have power to require by subpoena the attendance and testimony of witnesses and the production of all … documentary evidence relating to any matter under investigation.").

In light of the foregoing, it is unsurprising that the courts that have considered the issue, including the Fifth and Tenth Circuit Courts of Appeals, have held that CPSC Commissioners' statutory removal protections are constitutional. *See Magnetsafety.org v. CPSC*, 129 F.4th 1253, 1265–66 (10th Cir. 2025); *Consumers' Research v. CPSC*, 91 F.4th 342, 351–56 (5th Cir. 2024); *United States v. SunSetter Prods. LP*, 2024 WL 1116062, at *2–4 (D. Mass. Mar. 14, 2024).

In opposing Plaintiffs' TRO motion, Defendants urged this Court not to follow the Fifth and Tenth Circuits because, according to Defendants, the question whether an agency "wields substantial executive power" is "dispositive" of whether its members can constitutionally be insulated from removal without cause, irrespective of "[t]he agency's structure," and the Fifth and Tenth Circuits have not sufficiently "grapple[d]" with the substantiality of the CPSC's executive

power. TRO Opp. 14. As explained above, however, Defendants misunderstand the role that the "substantiality" of an independent agency's powers plays in the constitutional analysis, and they also mistakenly assume that the powers of the CPSC are more "substantial" than those of the 1935 FTC. In short, Defendants give this Court no reason to depart from the consensus authority on the precise constitutional question presented here. That consensus authority is correct, and this Court should accordingly grant summary judgment for Plaintiffs and hold their terminations unlawful.

## II.    Equitable relief is warranted.

Once this Court concludes that Defendants have exceeded their statutory and constitutional authority by terminating Plaintiffs (in the case of President Trump) and by giving effect to the unlawful termination (in the case of Defendants Bessent, Vought, and Feldman), the proper remedy follows inexorably: This Court should declare the terminations unlawful and enjoin Defendants Bessent, Vought, and Feldman from effectuating them.

**A.** On the first two injunction factors, Plaintiffs will suffer irreparable harm if they remain barred from exercising their duties as Commissioners, and this harm cannot be adequately redressed through money damages. Plaintiffs hold offices of great national responsibility, to which they were entrusted by the American people acting through the President who nominated them and the Senate that confirmed them. Plaintiffs take their duty toward the safety of American consumers seriously, and their work gives them great fulfillment and purpose. If they are barred from serving out the remainder of their terms by an unlawful presidential directive, they will forever lose the opportunity to fulfill their statutory mandates. As courts confronting similar issues have concluded, "the loss of the ability to do what Congress specifically directed [Plaintiffs] to do cannot be remediated with anything other than equitable relief." *Dellinger v. Bessent*, — F. Supp. 3d —, 2025 WL 471022, at *11 (D.D.C. Feb. 12, 2025), *appeal dismissed*, 2025 WL 559669 (D.C. Cir.

Feb. 15, 2025); *see, e.g.*, *LeBlanc v. U.S. Privacy & Civil Liberties Oversight Bd.*, — F. Supp. 3d —, 2025 WL 1454010, at *28–32 (D.D.C. May 21, 2025) (noting that the unlawful termination of an independent agency head "implicate[s] core separation of powers issues" and is "strikingly different from … 'routine' employment circumstances"); *Grundmann v. Trump*, — F. Supp. 3d —, 2025 WL 782665, at *16–17 (D.D.C. Mar. 12, 2025) (explaining that "[a] check in the mail does not address the gravamen" of losing the opportunity to "serve [one's] country at the highest possible level in [one's] field"); *Wilcox v. Trump*, — F. Supp. 3d —, 2025 WL 720914, at *15 (D.D.C. Mar. 6, 2025) (noting that being "deprived of the ability to carry out [one's] congressional mandate … cannot be retroactively cured by monetary damages"), *appeal filed* No. 25-5057 (D.C. Cir.); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173 (1803) ("The value of a public office[,] not to be sold, is incapable of being ascertained; and the [officer] has a right to the office itself, or to nothing.").

Defendants' opposition to Plaintiffs' TRO motion addressed none of this recent authority, which is directly on point here. Instead, Defendants argued that "the loss of employment does not constitute irreparable harm," even if the job at issue is "a unique, singular, or high-level position." TRO Opp. 15. Every case cited by Defendants, however, involved a terminated employee's request for a preliminary injunction or TRO and, thus, considered only the harm of refusing to allow the employee to return to service during the discrete period in which the employee's lawsuit remained pending. *See Sampson v. Murray*, 415 U.S. 61, 83–84 (1974); *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1156 (7th Cir. 1998); *Marxe v. Jackson*, 833 F.2d 1121, 1123 (3d Cir. 1987); *Rubino v. City of Mt. Vernon*, 707 F.2d 53, 53 (2d Cir. 1983); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978); *Bauer v. Summey*, 568 F. Supp. 3d 573, 581 (D.S.C. 2021); *Davis*

15

*v. Billington*, 76 F. Supp. 3d 59, 61–62 (D.D.C. 2014); *Farris v. Rice*, 453 F. Supp. 76, 76–77 (D.D.C. 2006); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2 (D.D.C. 1998); *Burns v. GAO Emps. Fed. Credit Union*, 1988 WL 134925, at *2 (D.D.C. Dec. 2, 1988).

By contrast, here, absent injunctive relief, Plaintiffs do not face a temporary inability to serve in their offices, but an inability *ever* to do so. Courts routinely exercise their equitable power to order reinstatement after reaching a final determination that a termination was unlawful. *See, e.g.*, *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) ("After a finding of wrongful discharge, reinstatement, not front pay, is the preferred equitable remedy."); *Cook v. Arentzen*, 1977 WL 4327, at *4 (4th Cir. 1977) (holding that employee was "entitled to reinstatement in the Regular Navy" at her prior rank because she had been "separated from the Navy pursuant to an unconstitutional regulation"); *Allen v. Autauga Cty. Bd. of Educ.*, 685 F.2d 1302, 1306 (11th Cir. 1982) (describing the equitable "rule of presumptive reinstatement" and explaining that "[w]hen a person loses his job, it is at best disingenuous to say that money damages can suffice to make that person whole"); *Franklin v. Cty. Sch. Bd. of Giles Cty.*, 360 F.2d 325, 327 (4th Cir. 1966) (reinstating teachers who had been terminated because of their race); *cf. Rankin v. McPherson*, 483 U.S. 378, 383–84 (1987) (observing that even a "probationary employee" who may be "discharged for any reason or for no reason at all … may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right[s]").

Equitable relief is particularly necessary here, where Congress has expressly provided for-cause removal protections to ensure the CPSC's independence. If monetary relief were the only remedy available for the violation of the statutory provision establishing that CPSC Commissioners may be terminated only "for neglect of duty of malfeasance in office but for no other cause," 15 U.S.C. § 2053(a), the provision would be ineffectual at furthering Congress's

objective of insulating the Commissioners from political influence. Such a result would transform a congressional guarantee of agency independence into little more than a severance-pay provision.

**B.** For similar reasons, the balance of equities and public interest also favor an injunction. Once this Court has concluded that the CPSA's for-cause removal protections are constitutional, Defendants have no equitable interest in flouting them. And "[t]here is generally no public interest in the perpetuation of unlawful … action"; rather, "there is a substantial public interest 'in having government[] … abide by … federal laws.'" *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).[3]

The undisputed facts of this case, moreover, bespeak particular urgency in reinstating Plaintiffs to their Commissioner roles. As Plaintiffs have described in their declarations, the CPSC in their absence faces existential threats to its ability to continue fulfilling its consumer-protection role. Plaintiffs' voices and votes are needed to resist RIF and reorganization plans that will degrade the agency's functionality, *see* Pls.' Statement of Facts ¶ 17, push forward essential product-safety standards that address risks posed by emerging technologies, *id.* ¶ 24, and ensure that the agency prioritizes preventing injuries and deaths caused by hazardous products rather than easing the regulatory burden on industry, *id.* ¶¶ 25–26. While Defendants have asserted that Plaintiffs' desire to "oppose" executive actions that they view as harmful to the CPSC's integrity "proves the merits point," TRO Opp. 16, this assertion gets the order of operations backwards. This Court's merits

---

[3] Although the Fourth Circuit has cautioned courts against embracing the argument that a governmental action "is against the public interest because it is unlawful" when considering whether an applicant for *preliminary* relief has satisfied "the merged balance of equities and public interest factor," *USA Farm Labor, Inc. v. Micone*, 2025 WL 586339, at *4 (4th Cir. Feb. 24, 2025), this reasoning does not apply where a court, at summary judgment, has concluded that governmental action is *in fact* unlawful. Otherwise, courts would be left in the untenable position of identifying illegal governmental conduct but assessing—based on what criteria, one wonders— whether the public would be better off if the government continued defying the law.

conclusion on the constitutional issues presented in this case is logically prior to the question whether an injunction is the proper remedy. If the Court concludes, as it should, that Congress permissibly structured the CPSC as an independent multimember agency, then Plaintiffs are entitled to use their independent judgment to guide the agency in the direction they think best serves the public. And the loss of Plaintiffs' expert judgment in this respect—which Congress viewed as necessary—is thus a loss to the public.

Similarly confusing remedy with the merits, Defendants have argued that an injunction "would raise grave separation-of-powers concerns" and require the President to "retain the services of principal officers whom [he] no longer believes should be entrusted with the exercise of executive power." TRO Opp. 17. A merits ruling in Plaintiffs' favor, though, will resolve the separation-of-powers issues and establish that the existence of an independent CPSC works no cognizable harm to the President's legitimate constitutional authority. Likewise, although Defendants may believe that "the public interest is better served by Commissioners who hold the President's confidence," *id.* at 18, Congress saw things differently and enacted a statute reflecting its judgment that the public would best be served by a CPSC capable of "maintain[ing] an attitude of independence against the [President's] will." *Humphrey's Executor*, 295 U.S. at 629. Provided that this congressional judgment is consistent with the Constitution—which it is—this Court's role is to effectuate it. *See Rostker v. Goldberg*, 453 U.S. 57, 68 (1981) (cautioning courts to be "particularly careful not to substitute [their] judgment of what is desirable for that of Congress").

The Supreme Court's order in *Wilcox* does not suggest otherwise. There, in staying the reinstatement of independent agency heads pending further merits review, the Court expressed its "judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from

being unable to perform her statutory duty." 2025 WL 1464804, at *1. This observation reflects the Court's assessment of the equities in a preliminary posture, where resolution of the legality of the officers' removals was "better left for resolution after full briefing and argument." *Id.*; *see id.* (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam), for the proposition that "interim equitable relief" is meant "not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward"). The Court's order cannot plausibly be read to suggest that the equities would favor permanently barring from office a public servant whose termination had been conclusively established as unlawful following full assessment of the merits. Similarly, a final judgment in Plaintiffs' favor will establish the rights of the parties and so obviate any concern over "the disruptive effect" that could arise from Plaintiffs' "repeated removal and reinstatement" while the case remains in a preliminary posture. *Id.*

**C.** That this case presents separation-of-powers issues does not foreclose this Court from granting meaningful relief. Indeed, it is precisely when governmental actors overstep the bounds of their lawful authority that judicial intervention is most urgently required. And long historic practice establishes that the federal courts have authority to declare that the termination of a public official is unlawful. *See Marbury*, 5 U.S. (1 Cranch) at 171 (observing that where a public officer "is directed by law to do a certain act affecting the absolute rights of individuals, … the performance of which, the President cannot lawfully forbid, … as for example, to record a commission, … it is not perceived on what grounds the courts of the country are further excused from the duty of giving judgment"); *cf. Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 544 (1915) (recognizing a court's authority to "determin[e] which of two claimants [is] entitled to an office"); *Delgado v. Chavez*, 140 U.S. 586, 590 (1891) (describing the writ of *quo warranto* as "a plain, speedy, and adequate … remedy for trying the title to office").

As for injunctive relief, the D.C. Circuit, which "is no stranger to removal challenges," has "twice recognized that" the sort of relief that Plaintiffs seek here—an injunction that bars subordinate executive officers from giving effect to unlawful terminations—"is available and advisable." *Grundmann*, 2025 WL 782665, at *13 (citing *Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023), and *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996)). This recognition finds strong support in historic practice. *See, e.g.*, *Delgado*, 140 U.S. at 591 (affirming the grant of equitable relief in a case "by certain parties showing themselves to be *de facto* commissioners to compel [a public official] to respect their possession of the office, discharge his duties …, and not assume to himself judicial functions, and adjudicate against the validity of their title").

Defendants have pointed to the statement in *In re Sawyer*, 124 U.S. 200 (1888), that "a court of equity has no jurisdiction over the appointment and removal of public officers." TRO Opp. 20 (quoting *Sawyer*, 124 U.S. at 212). More recent precedent, however, confirms the courts' authority to enjoin subordinate officials from giving effect to an unlawful termination. *See Delgado*, 140 U.S. at 590 (recognizing a court's ability to "compel [a public offer] to recognize [plaintiffs] as the commissioners of the county," irrespective of whether the court could order their appointment "*de jure*"); *Grundmann*, 2025 WL 782665, at *15 (citing cases); *see also Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902) (recognizing that courts "must have power in a proper proceeding to grant relief" that protects individuals against the "action of a public and administrative officer[] whose action is unauthorized by any law, and is in violation of the rights of the individual"); *cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 589 (1952) (affirming district court judgment enjoining Secretary of Commerce from implementing a Presidential action that exceeded his constitutional authority). Even *Sawyer*, moreover, did not hold that courts were powerless to order reinstatement of an unlawfully terminated officer. Rather,

20

it stated that such relief should issue pursuant to a writ of mandamus, prohibition, or *quo warranto*. *See Sawyer*, 124 U.S. at 212. Whether this Court exercises its equitable authority or its power of mandamus, 28 U.S.C. § 1361, to do so, this Court should grant the requested relief.

## CONCLUSION

This Court should grant summary judgment in Plaintiffs' favor, declare their terminations unlawful and without effect, and enjoin Defendants Bessent, Vought, and Feldman from obstructing Plaintiffs from performing their duties as CPSC Commissioners in any way, including by obstructing their access to their offices, email accounts, CPSC equipment, files, and staff; by withholding their pay or benefits; or by otherwise treating their purported terminations as effective.

Dated: May 30, 2025

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone
(admitted *pro hac vice*)
Stephanie Garlock
(D. Md. Bar No. 31594)
Allison M. Zieve
(admitted *pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiffs*