UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARY BOYLE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>*Defendants*. | Civil Action No. 8:25-cv-1628-MJM |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Stephanie Garlock
(D. Md. Bar No. 31594)
Nicolas A. Sansone
(admitted *pro hac vice*)
Allison M. Zieve
(admitted *pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

I.    The CPSA's tenure protections are constitutional. ............................................................. 2

II.   Plaintiffs' ongoing, irreparable harm, the balance of equities, and the public interest favor entry of equitable relief. ........................................................................................ 8

III.  This Court has authority to order the requested relief. ...................................................... 12

CONCLUSION ................................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Baker v. Carr*,
369 U.S. 186 (1962) .................................................................................................... 14

*Berry v. Reagan*,
1983 WL 538 (D.D.C. Nov. 14, 1983) ......................................................................... 14

*Collins v. Yellen*,
594 U.S. 220 (2021) ....................................................................................................... 3

*Consumers' Research v. Consumer Product Safety Commission*,
91 F.4th 342 (5th Cir. 2024) .......................................................................................... 2

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
561 U.S. 477 (2010) ...................................................................................................... 8

*Harkrader v. Wadley*,
172 U.S. 148 (1898) .................................................................................................... 14

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935) ........................................................................................ 1, 6, 7, 13

*Hunter v. Town of Mocksville*,
897 F.3d 538 (4th Cir. 2018) ........................................................................................ 9

*In re Sawyer*,
124 U.S. 200 (1888) .................................................................................................... 14

*Leachco, Inc. v. Consumer Product Safety Commission*,
103 F.4th 748 (10th Cir. 2024) ..................................................................................... 2

*LeBlanc v. U.S. Privacy & Civil Liberties Oversight Board*,
— F. Supp. 3d —, 2025 WL 1454010 (D.D.C. May 21, 2025) ................................. 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................... 15

*Myers v. United States*,
272 U.S. 52 (1926) ...................................................................................................... 12

*Paroczay v. Hodges*,
219 F. Supp. 89 (D.D.C. 1963) ................................................................................... 14

*Pelicone v. Hodges*,
320 F.2d 754 (D.C. Cir. 1963) .................................................................................... 14

*Priddie v. Thompson*,
    82 F. 186 (D.W.V. 1897) .................................................................................... 14, 15

*Sampson v. Murray*,
    415 U.S. 61 (1974) ..................................................................................................... 9

*Seila Law LLC v. Consumer Financial Protection Bureau*,
    591 U.S. 197 (2020) ..................................................................................... 3, 5, 6, 8

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) ............................................................................... 15

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) .......................................................................... 13, 15

*Town of Chester v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) ................................................................................................ 15

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025) .............................................................................................. 4

*United States v. SunSetter Products LP*,
    2024 WL 1116062 (D. Mass. Mar. 14, 2024) ........................................................... 2

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) ................................................................................................ 14

*Walton v. House of Representatives*,
    265 U.S. 487 (1924) ................................................................................................ 14

*White v. Berry*,
    171 U.S. 366 (1898) ................................................................................................ 14

**Other Authorities**

Consumer Product Safety Commission, *Performance Budget Request to Congress: Fiscal Year 2026* (May 30, 2025) .................................................................................. 10

**INTRODUCTION**

President Donald J. Trump terminated Plaintiffs Mary Boyle, Alexander Hoehn-Saric, and Richard Trumka Jr. from their roles at the Consumer Product Safety Commission (CPSC) without cause and in conceded violation of tenure protections afforded by the Consumer Product Safety Act (CPSA). To justify this action, the President and Defendants Scott Bessent, Russell Vought, and Peter A. Feldman argue that the President has a constitutional prerogative to override statutory tenure protections of the sort found in the CPSA. The Supreme Court, however, has held otherwise. In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that the President must comply with statutory removal restrictions for multimember bodies of nonpartisan experts.

In arguing that *Humphrey's Executor* does not apply here, Defendants contend that the CPSC exercises substantial executive power. But *every* federal agency wields executive power, and all of the Supreme Court's observations about whether an agency's exercise of "substantial" executive power forecloses its independence have been in the context of a single-director agency, not a multimember agency like the CPSC. The proper question for agencies like the CPSC is whether they carry out the sort of regulatory (quasi-legislative) and adjudicatory (quasi-judicial) functions in *Humphrey's Executor*. And although Defendants point to minor distinctions between the CPSC's functions and those of the agency for which *Humphrey's Executor* held tenure protections to be permissible, Defendants do not explain why those distinctions make a difference. This Court should follow the Supreme Court precedent that directly controls.

Defendants' arguments that Plaintiffs, if successful on the merits, are not entitled to the declaratory and injunctive relief they seek largely rehash merits arguments that this Court necessarily will have rejected if it reaches the issue of remedy. This Court should grant Plaintiffs' summary judgment motion, deny Defendants' cross-motion, and enter the requested relief.

**ARGUMENT**

I.   **The CPSA's tenure protections are constitutional.**

Defendants concede that the CPSA protects CPSC Commissioners from termination absent "neglect of duty or malfeasance in office." Defs. Opp., ECF 21-1, at 2 (quoting 15 U.S.C. § 2053(a)). And Defendants do not dispute that Plaintiffs "have performed ably in their roles and have never been accused of neglect of duty or malfeasance in office by either of the Presidents under whom they have served." Pls. Statement of Facts, ECF 18-2, ¶ 5; *see* Defs. Statement of Facts, ECF 21-2, ¶ 1. The undisputed facts, then, establish that Plaintiffs are entitled to judgment as a matter of law, provided that the CPSA's tenure protections are constitutional. They are.

Arguing to the contrary, Defendants emphasize that the President generally possesses "the authority to remove those who assist him in carrying out his duties." Defs. Opp. 5–6 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 215 (2020)). They concede, though, that the binding precedent of *Humphrey's Executor* creates an exception for members of "multimember bod[ies] of experts balanced along partisan lines, that perform[] legislative and judicial functions." *Id.* at 6 (quoting *Seila Law*, 591 U.S. at 216). As Plaintiffs have explained, and as several courts have held, the CPSC is precisely such a body. Pls. Mem., ECF 18-1, at 7–9; *see Consumers' Rsch. v. CPSC*, 91 F.4th 342, 353–54 (5th Cir. 2024); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 761–63 (10th Cir. 2024); *United States v. SunSetter Prods. LP*, 2024 WL 1116062, at *2–4 (D. Mass. Mar. 14, 2024).

**A.**   Defendants seek to distinguish *Humphrey's Executor* by contending that its holding permits Congress to confer tenure protections only on multimember agencies that exercise "no executive power." Defs. Opp. 7. This contention is incorrect. *Humphrey's Executor* upheld tenure protections for members of the Federal Trade Commission (FTC), an independent agency that falls within the executive branch and exercises executive power, as that term is used today. *See* Pls.

2

Mem. 10 (citing *Morrison v. Olson*, 487 U.S. 654, 689 n.28 (1988), and *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013)). Although the Supreme Court has observed that, in *Humphrey's Executor*, the FTC "was said not to exercise any executive power," *Seila Law*, 591 U.S. at 216, it was the FTC's "'quasi-judicial' or 'quasi-legislative' *functions*," not the language that *Humphrey's Executor* used to characterize the functions, that established the constitutionality of the FTC's tenure protections. *Id.* at 217 (emphasis added). Thus, the Supreme Court has construed *Humphrey's Executor* as an exception to the President's authority to remove executive officers, and it has recently—and repeatedly—declined to repudiate the decision despite disavowing its characterization of the FTC as nonexecutive. *See* Pls. Mem. 10 (citing *Seila Law*, 591 U.S. at 216 n.2; *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495 (2010)).

Defendants' similar argument that *Humphrey's Executor* does not apply to multimember agencies that exercise "*substantial* executive power" fares no better. Defs. Opp. 8 (emphasis added). While Defendants focus on a sentence in *Seila Law* stating that *Humphrey's Executor* applies to "multimember expert agencies that do not wield substantial executive power," *id.* (quoting *Seila Law*, 591 U.S. at 218), *Seila Law* explains that it was the FTC's "organizational features" (features that the CPSC shares), not the substantiality of its powers, that "explain[ed] [*Humphrey's Executor*'s] characterization of the FTC as non-executive." *Seila Law*, 591 U.S. at 216. Instead, *Seila Law*'s remedial discussion and the Court's holding in *Collins v. Yellen*, 594 U.S. 220 (2021), confirm that the constitutionality of tenure protections for heads of multimember agencies does not turn on the substantiality of the agency's duties. *See* Pls. Mem. 11. In any event, however substantial the CPSC's powers, they are no more so than the 1935 FTC's. *See id.* at 12.[1]

---

[1] Defendants point out that *Seila Law*'s remedial discussion "was joined by only a plurality of the Court." Defs. Opp. 15. But as Plaintiffs have explained, the four dissenting Justices necessarily would have held a multimember structure for an agency that holds significant executive power—

Contrary to Defendants' argument, Defs. Opp. 8, the Supreme Court's order in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), does not suggest that substantiality is relevant for multimember agencies. According to Defendants, "*Wilcox* confirm[s] that the structure of an agency as a multimember board alone is not enough for *Humphrey's Executor* to apply," Defs. Opp. 8, but Plaintiffs have not argued that a multimember structure is sufficient. Rather, as Plaintiffs have explained, *Humphrey's Executor* establishes the constitutionality of tenure protections for heads of multimember expert bodies that perform duties that were at the time characterized as "legislative and judicial functions." Pls. Mem. 8 (quoting *Seila Law*, 591 U.S. at 216). The Court in *Wilcox* held that a determination of the nature of the agency functions at issue in that case would benefit from "full briefing and argument," 145 S. Ct. at 1415, but it did not suggest that the relevant question is whether those functions are "substantial." To the contrary, while recognizing that the agencies likely "exercise[d] considerable executive power," it withheld judgment on whether *Humphrey's Executor*'s "recognized exception" to the President's removal power might apply. *Id.*

**B.** Posing the wrong question, Defendants proceed to the wrong answer. Citing the Fifth and Tenth Circuits' conclusions that the CPSC "wields substantial executive power" (but ignoring those courts' holdings that the CPSC's tenure protections are nonetheless constitutional under *Humphrey's Executor*), Defendants urge this Court to opine likewise on whether the CPSC wields substantial executive powers. Defs. Opp. 15 (citing *Consumers' Rsch.*, 91 F.4th at 353–54; *Leachco*, 103 F.4th at 761). As explained, though, asking whether the CPSC's powers are "executive," and even whether they are "substantial," is the wrong question. The question is whether the CPSC's powers embody the functions, characterized at the time as quasi-legislative

---

the remedial fix suggested by the plurality—to be constitutional. *See* Pls. Mem. 11 n.1. And as Plaintiffs have also explained, what Defendants refer to as *Seila Law*'s "speculation," Defs. Opp. 15, receives strong support from the majority opinion in *Collins*. *See* Pls. Mem. 11.

4

and quasi-judicial, considered in *Humphrey's Executor*. They do. *See* Pls. Mem. 7–9.

In arguing to the contrary, Defendants identify three "types of power" that the CPSC exercises and that "the Supreme Court found to be indisputably executive in *Seila Law*," Defs. Opp. 9: the power to issue regulations, the power to conduct administrative adjudications, and the power to bring enforcement actions. Even setting aside the immateriality of whether those powers are executive, though, the question whether Congress may establish a single independent agency head who may "*unilaterally*" wield them—the question at issue in *Seila Law*, 591 U.S. at 225 (emphasis in original)—has little bearing on whether Congress may establish an independent "multimember body of experts, balanced along partisan lines," that may do so. *Id*. at 216. And although Defendants contend that "*Seila Law* focused repeatedly on the nature of the [CFPB's] power, not the structure of the agency exercising that power," Defs. Opp. 16, the opinion itself belies that characterization. *See, e.g.*, 591 U.S. at 203 (stating, in the opinion's second sentence, that "[i]n organizing the CFPB, Congress deviated from the structure of nearly every other independent administrative agency in our history"); *id*. at 204 (describing "the novel context of an independent agency led by a single Director"); *id*. at 205 ("We … hold that the structure of the CFPB violates the separation of powers."); *id*. at 209 ("We granted certiorari to address the constitutionality of the CFPB's structure."); *id*. at 213 ("We hold that the CFPB's leadership by a single individual removable only for inefficiency, neglect of duty, or malfeasance violates the separation of powers."); *id*. at 216 (explaining that *Humphrey's Executor*'s holding was based on the "organizational features" of the FTC); *id*. at 218 (contrasting the CFPB's "single-Director structure" with the FTC's); *id*. at 220 ("An agency with a structure like that of the CFPB is almost wholly unprecedented."); *id*. at 222 ("The CFPB's single-Director structure is an innovation with no foothold in history or tradition."); *id*. at 222–23 (characterizing "the CFPB's single-Director

configuration" as "incompatible with our constitutional structure," which "scrupulously avoids concentrating power in the hands of any single individual"); *id*. at 225 (considering "several other features" of "the [CFPB's] unique structure"); *id*. at 238 ("While we have previously upheld limits on the President's removal authority in certain contexts, we decline to do so when it comes to principal officers who, *acting alone*, wield significant executive power." (emphasis added)).

In short, *Seila Law* casts no doubt on whether an independent agency structured like the CPSC may constitutionally perform the functions that Defendants identify. Indeed, *Seila Law*'s remedial discussion confirms that such an agency may do so. *See supra* p. 3 & n.1.

An examination of the powers of the FTC at the time that *Humphrey's Executor* approved the agency's independence settles the matter. As for the power to promulgate regulations, Defendants do not dispute that the FTC had this power at the time *Humphrey's Executor* was decided. *See* Pls. Mem. 12 (citing Federal Trade Commission Act, Pub. L. No. 63-203, § 6(g), 38 Stat. 717, 722 (1914)). They argue only that *Humphrey's Executor* "did not … mention" this power. Defs. Opp. 12. The FTC's regulatory power, however, is plain on the face of its organic statute. And the Court explicitly referenced the FTC's authority to determine, in the context of an adjudication, whether a particular "method of competition is … prohibited." *Humphrey's Executor*, 295 U.S. at 620. Defendants offer no reason why the authority to "interpret[] a law enacted by Congress to implement the legislative mandate," Defs. Opp. 10 (quoting *Collins*, 594 U.S. at 254), is a meaningfully different function when it occurs in the context of an adjudication rather than a rulemaking.

As for the power to conduct adjudications, Defendants acknowledge that *Humphrey's Executor* expressly considered the FTC's authority in this respect, but they contend that the consideration was "limited" to the FTC's power to act as a master in chancery at the request of a

6

court. Defs. Opp. 13. Defendants are simply wrong. Although the opinion refers to the statutory provision empowering the FTC to act as a master in chancery, *see Humphrey's Executor*, 295 U.S. at 621 (citing 15 U.S.C. § 47), it separately explains that the FTC "is empowered and directed to prevent [specified parties] from using unfair methods of competition in commerce" and that the FTC may do so by "issu[ing] a complaint," holding a hearing, making "findings as to the facts" and conclusions of law, and issuing a legally enforceable "cease and desist order," *id.* at 620–21 (quoting 15 U.S.C. § 45). The opinion, in other words, describes a textbook administrative enforcement action of the sort conducted by the CPSC and innumerable other agencies. *See* Defs. Opp. 10 (describing statutory provisions that entitle the CPSC to order parties to "cease" certain practices or take other remedial actions if it "makes certain determinations[] … after a hearing").

Finally, as for enforcement authority, Defendants acknowledge that *Humphrey's Executor* "described the 1935 FTC's 'wide powers of investigation' in the facts section of the opinion." Defs. Opp. at 12 (quoting *Humphrey's Executor*, 295 U.S. at 621). And they cannot deny that the opinion also described the FTC's authority to bring civil enforcement actions in court. *See Humphrey's Executor*, 295 U.S. at 620–21. Defendants emphasize that the CPSC may "issue and enforce subpoenas," Defs. Opp. 11, but they do not dispute that the 1935 FTC had the same authority. *See* Pls. Mem. 13 (citing Pub. L. No. 63-203, § 9, 38 Stat. at 722). Instead, they state that *Humphrey's Executor* "did not consider or analyze this power." Defs. Opp. 13. As with the FTC's rulemaking power, however, its authority to enforce subpoenas is plain on the face of the statute that was before the Court. The fact that the Court did not specifically enumerate every "power[] of investigation," *Humphrey's Executor*, 295 U.S. at 621, contained in the statute does not mean that the Court was ignorant of what those powers were. Defendants also assert that the CPSC's authority to seek monetary penalties in court "by itself, is enough to render the

*Humphrey's Executor* exception inapplicable." Defs. Opp. 12. But while it is true that *Seila Law* identifies the pursuit of monetary penalties as an "executive power not considered in *Humphrey's Executor*," 591 U.S. at 219, *Seila Law* does not suggest that *Humphrey's Executor* would have reached a different result had the 1935 FTC been able to seek a different form of remedy in the civil enforcement actions that it was undisputedly empowered to bring. Indeed, as Plaintiffs have explained, Pls. Mem. 11, despite acknowledging the CFPB's authority to seek monetary penalties, *Seila Law* notes that Congress could respond to the constitutional problem with the statutory tenure protections for the single CFPB Director by "converting the CFPB into a multimember agency." *Seila Law*, 591 U.S. at 237 (plurality opinion). In addition, as Defendants concede, the CPSC cannot bring criminal enforcement actions without authorization from the Attorney General. Defs. Opp. 3. And the Attorney General, of course, *is* removable at will, allowing the President to "attribute" any "failings" in the CPSC's criminal enforcement activities "to those whom he *can* oversee." *Free Enterprise Fund*, 561 U.S. at 496.

Ultimately, Defendants fail to identify any meaningful differences between the powers of the CPSC and the powers that the Court considered in *Humphrey's Executor*—let alone explain why the differences that they purport to identify call for a different result here. This Court should join the Fifth and Tenth Circuit Courts of Appeals and hold that *Humphrey's Executor* controls.

II. **Plaintiffs' ongoing, irreparable harm, the balance of equities, and the public interest favor entry of equitable relief.**

Once this Court has determined that Plaintiffs are entitled to judgment as a matter of law, the proper remedy is a declaration that their terminations were unlawful and an injunction barring Defendants Bessent, Vought, and Feldman from effectuating them.

**A.** Plaintiffs have explained that they will suffer irreparable harm if they are permanently barred from serving in the offices to which they were entrusted by the American people, acting

through the President who appointed Plaintiffs and the Senate that confirmed them. Pls. Mem. 14. This harm, which costs Plaintiffs a unique opportunity to serve their country and draw on their expertise to protect the health and welfare of millions, cannot be redressed through monetary relief.

Defendants claim otherwise, arguing that back pay (and, presumably, front pay for the remainder of Plaintiffs' terms) can fully remedy Plaintiffs' injuries. *See* Defs. Opp. 21–24. This argument ignores that "[a]fter a finding of wrongful discharge, reinstatement, not front pay, is the preferred equitable remedy." *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018). Overlooking this principle and the body of cases applying it, *see* Pls. Mem. 16 (citing cases), Defendants contend that "courts across the country have concluded that loss of employment does not constitute irreparable harm." Defs. Opp. 22. But every single case that Defendants cite for that proposition—as well as *Sampson v. Murray*, 415 U.S. 61 (1974), and the Supreme Court's order in *Wilcox*, both of which Defendants cite in support of their claim that the Supreme Court has not "recognized" the loss of a position as irreparable harm, Defs. Opp. 21, 23—arose in the context of a terminated employee's request for preliminary relief. The cases therefore did not consider the harm of being *permanently* barred from one's job following a conclusive legal determination that one's termination had been unlawful. *See* Pls. Mem. 15–16.

Indeed, the only response that Defendants make to the cases that Plaintiffs cite for the proposition that reinstatement is routine is that these cases do not "address executive officers." Defs. Opp. 20. It is unclear, however, why the harm that an executive officer faces from removal is any less than the harm that anybody else faces from permanently losing a valued professional role. Moreover, courts that have recently considered the termination of independent agency heads have concluded that unlawful removal from such a role "constitute[s] a 'genuinely extraordinary situation'" that causes, if anything, *greater* irreparable harm than the loss of a job under "'routine'

9

employment circumstances." *LeBlanc v. U.S. Privacy & Civil Liberties Oversight Bd.*, — F. Supp. 3d —, 2025 WL 1454010, at *30 (D.D.C. May 21, 2025) (quoting *Sampson*, 415 U.S. at 91 n.68); *see* Pls. Mem. 14–15 (citing other cases). Defendants urge this Court to ignore these opinions, emphasizing that they are "out-of-circuit, non-binding district court cases" and that some of them are being appealed, Defs. Opp. 23 & n.5, but Defendants identify no flaw in their reasoning.[2]

Moreover, Plaintiffs have produced unrebutted evidence that their absence from the CPSC is costing them the chance to participate in consequential decisions that, in Plaintiffs' view, will profoundly affect the future of the CPSC and have a serious impact on the safety of the American public. *See* Pls. Statement of Facts ¶¶ 17–29; Defs. Statement of Facts ¶ 1 (declining to "dispute the veracity" of those facts). Indeed, in Plaintiffs' absence, the CPSC just last week issued a budget request to Congress that recommended cutting personnel at the CPSC and folding the agency into the U.S. Department of Health and Human Services, thereby compromising its independence. *See* CSPC, *Performance Budget Request to Congress: Fiscal Year 2026*, at 1 (May 30, 2025).[3]

Defendants respond that "missing out on the opportunity to oppose the President's proposals" cannot constitute irreparable harm because our "constitutional structure" guarantees the President "power to supervise and remove those who wield executive power on his behalf to maintain control over the Executive Branch." Defs. Opp. 24. This argument, however, presupposes that Defendants will prevail on the merits; if they do not, it bears no weight. And in any event, Plaintiffs do not seek to "oppose the President's proposals." *Id.* They wish to exercise their independent judgment to advance the work of the agency to further consumer product safety. That

---

[2] Defendants also argue that Plaintiffs' status as executive officers means that the reinstatement remedy falls outside this Court's equitable powers. Defs. Opp. 17–21. That argument is unrelated to consideration of irreparable harm and, in any event, is meritless. *See infra* Part III.

[3] https://www.cpsc.gov/s3fs-public/FY-2026-Budget-Request.pdf.

opportunity was guaranteed to them by Congress, and it will be forever lost absent equitable relief.

**B.** Plaintiffs have explained that preserving the independence that Congress sought to guarantee in creating the CPSC will serve the public interest, and that being prevented from degrading that independence works no legitimate harm on the executive. Pls. Mem. 17–19.

As above, Defendants' arguments to the contrary all presuppose Defendants' success on the merits. For example, Defendants maintain that "[t]he President cannot be compelled to retain the services of principal officers whom the President no longer believes should be entrusted with the exercise of executive power." Defs. Opp. 25. But if the Court agrees with Plaintiffs that Congress's decision to insulate the CPSC in some measure from presidential control is lawful, the President does *not* have authority to invade the agency's independence. To the contrary, the public interest would lie in enforcing Congress's legislative scheme, not the President's unlawful act of defying it. After all, notwithstanding Defendants' observation that "the American people[] … elected the President to manage the Executive Branch of their government," *id.*, they also elected representatives to Congress to create and structure federal agencies in ways that will serve the public good.

Citing the Supreme Court's *Wilcox* order, Defendants suggest that the "Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Id.* at 24 (quoting *Wilcox*, 145 S. Ct. at 1415). As Plaintiffs have explained, though, the *Wilcox* order's grant of a stay pending a merits resolution cannot properly be read to suggest that equity demands enforcement of a termination that a court has definitively held to exceed the President's lawful authority. Pls. Mem. 18–19. Such a result would render Congress's laws nugatory and reward executive defiance, all to the detriment of the American people.

### III. This Court has authority to order the requested relief.

Once the Court has concluded that Plaintiffs prevail on the merits and have satisfied the requirements for equitable relief, it should enter the declaratory and injunctive relief that Plaintiffs seek. Defendants contend that, even if Plaintiffs' terminations were unlawful and even if the equities support the requested relief, this Court is powerless to enforce Congress's directive that the CPSC shall remain a body of independent, nonpartisan experts. Defs. Opp. 17–21. This Court should reject Defendants' invitation to tie its own hands.

**A.** Essentially repackaging their merits argument into a remedial argument, Defendants contend that reinstatement would compel the President "to retain the services of a principal officer whom he no longer believes should be entrusted with the exercise of executive power." Defs. Opp. 18; *see id.* at 20 (arguing that equitable relief is unavailable because "Congress's statutory removal protections are exactly the type of unconstitutional shields that the Supreme Court has concluded violates the separation of powers"). But the remedial issue arises only if the Court agrees that Defendants' actions were beyond their lawful authority and that Congress may permissibly establish the CPSC as an independent multimember expert body. If so, Plaintiffs' proposed remedy does not pose the separation-of-powers problems that Defendants say it does.

Defendants attempt to find support for their position in a smattering of statements made by representatives at the First Congress. *Id.* at 18. The Supreme Court, however, exhaustively reviewed this Founding-era evidence in *Myers v. United States*, 272 U.S. 52 (1926), and did not find it "conclusive," *id.* at 136. Certainly, *Myers* ultimately held that the Constitution confers a generally "unrestrictable power of the President to remove," but less than a decade later, the Court unanimously held in *Humphrey's Executor* that, when it comes to "officers of the kind [there]" (and here) "no removal can be made during the prescribed term for which the officer is appointed,

12

except for one or more of the causes named in the applicable statute." *Humphrey's Executor*, 295 U.S. at 632; *see id.* at 626 ("disapprov[ing]" *Myers* to the extent that it is "out of harmony" with the holding in *Humphrey's Executor*).

Although *Humphrey's Executor* did not involve a request for equitable relief, withholding such relief as a categorical matter—as Defendants urge—would effectively abrogate the case's merits holding. Defendants have not responded to Plaintiffs' argument that giving effect to terminations that violate the tenure protections of agencies like the CPSC "would transform a congressional guarantee of agency independence into little more than a severance-pay provision." Pls. Mem. 17. This result is impossible to square with *Humphrey's Executor's* recognition that Congress may permissibly limit the President's ability to use his "power of removal" to exert "coercive influence" over "the independence of a commission" like the FTC. 295 U.S. at 629–30.[4]

**B.** Defendants next argue that reinstatement of federal officers lies categorically beyond this Court's equity powers. Defs. Opp. 19–21. To begin, irrespective of whether reinstatement is available in equity, Plaintiffs have explained that this Court may grant it through an exercise of its mandamus power. Pls. Mem. 20–21; *see Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ("[A] request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus in this context, where the injunction is sought to compel federal officials to perform a statutorily required ministerial duty."). Defendants offer no response.

Meanwhile, although Defendants cite cases for the proposition that reinstatement of a

---

[4] Defendants also contend that a reinstatement remedy would create separation-of-powers issues by authorizing courts to "exercise the appointment power for principal officers." Defs. Opp. 18. This argument misunderstands the nature of the relief that Plaintiffs request. Plaintiffs were duly appointed by President Joseph R. Biden Jr. and confirmed by the Senate. Recognizing that their purported terminations were outside the scope of President Trump's lawful authority would not be to appoint them, but to acknowledge that they have never stopped occupying their offices.

13

public officer falls outside the scope of a federal court's equity jurisdiction, Defs. Opp. 19, they ignore that courts—including the Supreme Court—have historically granted such relief. *See, e.g.*, *Vitarelli v. Seaton*, 359 U.S. 535, 546 (1959) (holding that an employee who had been unlawfully discharged from the Department of the Interior was "entitled to the reinstatement which he seeks"); *Pelicone v. Hodges*, 320 F.2d 754, 757 (D.C. Cir. 1963) (holding that an unlawfully discharged employee of the Department of Commerce was "entitled to reinstatement to Government service"); *Berry v. Reagan*, 1983 WL 538, at *6 (D.D.C. Nov. 14, 1983) (enjoining the President from "preventing or interfering" with the service of unlawfully terminated members of the U.S. Commission on Civil Rights); *Paroczay v. Hodges*, 219 F. Supp. 89, 95 (D.D.C. 1963) (declaring that an unlawfully terminated Department of Commerce employee was "entitled to be reinstated to his position" and "retain[ing] jurisdiction over the case so that a mandatory injunction can issue" if necessary); *Priddie v. Thompson*, 82 F. 186, 192 (D.W.V. 1897) (entering "an injunction … to restrain [a United States] marshal … from any interference or molestation with [the deputy marshal] in the possession of the office").[5]

More specifically, Defendants fail to address that the sort of "*de facto*" reinstatement that Plaintiffs seek by enjoining subordinate officers from giving effect to their unlawful terminations is a historically recognized form of relief. *See* Pls. Mem. 19–20 (citing *Delgado v. Chavez*, 140 U.S. 586, 591 (1891); *Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023); and *Swan*, 100

---

[5] With one exception, the cases that Defendants cite all describe limits on the federal courts' equitable powers with respect to *state* officers and proceedings. *See Walton v. House of Representatives*, 265 U.S. 487, 489 (1924); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898); *In re Sawyer*, 124 U.S. 200, 212 (1888); *see also Baker v. Carr*, 369 U.S. 186, 231 (1962) (describing *Walton* and *Sawyer* as "h[olding] that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer"). The one exception, *White v. Berry*, 171 U.S. 366 (1898), applied *Sawyer* to a federal officer, but it did not explain its basis for extending the case to this context and, in any event, it recognized the availability of a mandamus remedy, *id.* at 376–78.

F.3d at 980)); *see also Priddie*, 82 F. at 192. Ignoring *Delgado* entirely, Defendants relegate *Severino* and *Swan* to a footnote and argue that they are irrelevant because they addressed the *de facto* reinstatement remedy only in connection with standing. Defs. Opp. 23 n.4. Redressability, however, is one of "the essential elements of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992), and it must be demonstrated separately "for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Had *de facto* reinstatement been categorically unavailable in *Severino* and *Swan*—which both courts held it was not, *Severino*, 71 F.4th at 1042–43; *Swan*, 100 F.3d at 980–81—the plaintiffs would have lacked standing to pursue such relief and the courts would have been constitutionally powerless to consider the plaintiffs' claims.

Ultimately, then, history reinforces what common sense suggests: where an officer is unlawfully removed from the role with which the public has entrusted her, the violation can be remedied by restoring her to her position.

**C.** Finally, Defendants argue that restrictions on this Court's equity jurisdiction "preclude[] declaratory relief that would effectively reinstate Plaintiffs as Commissioners." Defs. Opp. 26. Because Defendants are wrong about the scope of this Court's authority to enter injunctive relief, their proposed limits on the scope of declaratory relief have no valid basis.

## CONCLUSION

For the foregoing reasons, and the reasons given in Plaintiffs' opening memorandum, this Court should grant Plaintiffs' motion for summary judgment, enter the requested declaratory and injunctive relief, and deny Defendants' cross-motion for summary judgment.

Dated: June 5, 2025                    Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone
(admitted *pro hac vice*)
Stephanie Garlock
(D. Md. Bar No. 31594)
Allison M. Zieve
(admitted *pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiffs*