# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BOYLE, *et al.*,<br><br>              Plaintiffs,<br><br>v.<br><br>TRUMP, *et al.*,<br><br>              Defendants. | Case No. 8:25-cv-1628-MJM |

### **DECLARATION OF TRIPP DEMOSS**

1. My name is Tripp DeMoss. I am currently employed at the Consumer Product Safety Commission ("CPSC") as the Senior Counsel to Acting Chairman Peter A. Feldman since May 5, 2025. As Senior Counsel, I provide advice and counsel to Acting Chairman Feldman on various legal issues facing him in his role as acting chairman of the CPSC. The following is based on my personal knowledge or information provided to me in the course of performing my official duties.

2. Acting Chairman Feldman serves as, among other things, principal executive officer of the CPSC that exercises all executive and administrative functions of the commission. 15 U.S.C. § 2053(f)(1).

3. I am familiar with the litigation in the above-styled matter, whereby on Friday, June 13, 2025, this Court issued an order directing that CPSC Commissioners Richard Trumka, Jr., Alexander Hoen-Saric, and Mary Boyle be reinstated to their positions from which they had been previously removed at the direction of President Donald Trump on May 8-9, 2025.

4. Pursuant to the CPSC's decision-making procedures (hereinafter referred to as the "DMPs"), which have traditionally governed the decision-making process of the CPSC since their

adoption in 2010, the staffs of each CPSC Commissioner may meet on a weekly basis to set the agenda of the Commission. DMP III.A provides that "(t)he Commission agenda shall be set, scheduled, and acted upon" through a process including that the "Agenda Planning Committee shall…meet at a regularly scheduled time every week as practicable." DMP III.A.1. A copy of the DMPs are attached to this declaration as **Exhibit 1**.[1] It is agency practice that the acting chairman's staff convenes meetings of the Agenda Planning Committee, including scheduling, facilitating, presiding, and rescheduling where appropriate.

**Proposed Agenda Directives**

5. On Monday June 16, 2025, at 5:49 p.m. EST, all members of the CPSC's Agenda Planning Committee, which includes staff for all CPSC Commissioners, as well as myself, received an email from now-reinstated CPSC Commissioner Richard Trumka, Jr. A copy of the email is attached to this declaration as **Exhibit 2**.[2]

6. Commissioner Trumka's proposal requested that several time-critical matters be added to the Commission's agenda on an emergency basis. Exhibit 2.

7. The Commission has not completed any formal process to deconflict the three reinstated Commissioners from official Commission business related to this litigation, nor has the Commission sought to deconflict specific Commission officers.

8. The three reinstated Commissions are adverse parties in a lawsuit against Acting Chairman Feldman with a financial interest in the litigation, and as such should be properly recused from matters relating to the litigation.

---

[1] The DMPs are marked "FOR OFFICIAL USE ONLY- DO NOT DISTRIBUTE OUTSIDE THE COMMISSION." A copy of the DMPs are being submitted under seal.

[2] Exhibit 2 is an email thread beginning with a scheduling invitation from Acting Chairman Feldman's office.

9. On Tuesday, June 17, 2025, at 9:44 a.m., Acting Chairman Feldman sent an email to the members of the Agenda Planning Committee rescheduling the 10:00 a.m. Agenda Planning Meeting, citing specific issues that needed to be addressed prior to the meeting. Exhibit 2. The Acting Chairman rescheduled the meeting because, among other reasons, the Commission has not completed any formal process to deconflict the three reinstated Commissioners from official Commission business related to this litigation, nor has the Commission sought to deconflict specific Commission officers or seek recusals.

10. Commissioner Boyle sent an email at 10:09 a.m. with a response, as shown in Exhibit 2. Email traffic in a similar vein followed, including an email sent at 10:23 a.m. by Commissioner Trumka to CPSC staff. Exhibit 2.

11. These emails and the requested actions further demonstrate the disruption caused by reinstatement. Indeed, it indicates a usurpation of the Acting Chairman's executive authority to supervise personnel and distribute agency business.

**Invalid Meeting of the Agenda Planning Committee on June 17, 2025**

12. Upon information and belief, it is my understanding that a meeting purporting to be a meeting of the Agenda Planning Meeting Committee, took place on or about June 17, 2025 at some point after 10:00 a.m., with the staffs of reinstated Commissioners Trumka, Boyle and Hoen-Saric participating.

13. The three reinstated Commissioners purported to convene this meeting of the Agenda Planning Committee without the participation of Acting Chairman Feldman, Commissioner Dziak or other Agenda Planning Committee members. The result of that meeting was the ostensible approval for a "Time Critical Ballot Vote" regarding "Commission Directions and Commission Policy Regarding Reductions in Force and Staff Details." A copy of the ballot is

attached as **Exhibit 3**. The meeting took place despite a prior and valid cancellation of the meeting by Acting Chairman Feldman, which was cancelled pursuant to his authority as chief executive officer of the CPSC. Exhibit 2. The meeting was cancelled to allow staff to undertake a potential deconfliction and recusal analysis. Exhibit 2.

14. At approximately 2:00 p.m., a Ballot Vote package was approved by the three reinstated Commissioners, with the abstention of Acting Chairman Feldman and Commissioner Dziak. My understanding is that Acting Chairman Feldman and Commissioner Dziak maintain that the meeting was unauthorized and invalid.

15. The Ballot Vote package appears to have been included on the Commission Agenda as an emergency addition. It adopts a "Commission Policy Regarding Reductions in Force and Staff Details" ("Personnel Policy"), that is "effective immediately." Exhibit 3.

16. This Personnel Policy requires majority vote of the Commission for any "actions...taken towards Reduction-in-Force of CPSC staff" "[n]otwithstanding the Directives or other policies governing the Commission." *Id.* The policy also requires that "[a]ny actions to implement or initiate Reductions in Force that are underway...be withdrawn immediately unless approved by a majority vote of the Commission." *Id.* The Personnel Policy also immediately terminates "[a]ny staff who have been hired, detailed, or otherwise placed at CPSC for the express purpose of carrying out *Implementing The President's 'Department of Government Efficiency' Cost Efficiency Initiative* Executive Order" without majority approval. *Id.* The policy immediately revokes their access to digital systems and direct security to "ensure that they are securely removed without damage to CPSC property." *Id.* Additionally, the Personnel Policy declares that "[i]t is the policy of the Commission that no staff shall be hired, detailed, or otherwise placed at CPSC for the express purpose of carrying out *Implementing The President's "Department Of*

- 4 -

*Government Efficiency" Cost Efficiency Initiative* Executive Order without approval by a majority vote of the Commission." *Id.*

17. Implementation of this Personnel Policy is disruptive because it conflicts with, undermines, and disrupts the Commission's balance of powers laid out by statute. Under the Consumer Product Safety Act, the Chairman is the "principal executive officer of the Commission, and he shall exercise *all of the executive and administrative functions* of the Commission, including (A) the *appointment and supervision of personnel employed under the Commission . . .*, (B) the distribution of business among personnel appointed and supervised by the Chairman and among administrative units of the Commission, and (C) the use and expenditure of funds." 15 U.S.C. § 2053 (f)(1) (emphasis added). Additionally, the statute provides that while the Chairman needs the approval of the Commission to appoint or remove certain enumerated statutory officers, 15 U.S.C. § 2053 (g)(1), he is expressly authorized—subject to the Commission's general policies, decisions, findings and determinations—to "employ such other officers and employees (including attorneys) as are necessary in the execution of the Commission's functions." 15 U.S.C. § 2053 (g)(1), (g)(2).

18. The Chairman's power over personnel also extends to reductions in force ("RIFs") and has always been understood to extend to RIFs. In addition to the statute—which vests the power to hire and fire (subject to certain exceptions not relevant here) in the Chairman, and the Executive Director, who reports to the Chairman—the Commission's internal directives provide that the Chairman is authorized to conduct all RIFs. For example, CPSC Dir. 0949.1, Reductions In Force (attached as "**Exhibit 4**"), has provided since at least January 15, 1987, that "RIF action will be initiated only when necessary and *as approved by the Chairman or Executive Director."* (Emphasis added).

- 5 -

- 6 -

19. In 2024, then-Chairman Hoehn-Saric—a plaintiff in this case—instituted a RIF to reduce headcount and manage the Agency to meet an anticipated lower appropriation in fiscal year 2026. He did so under his statutory authority as Chairman, without seeking a vote of the Commission.

20. Likewise, under the statute, the Chairman has exclusive power to manage personnel, including the personnel that have been or may be hired, detailed, or otherwise placed at CPSC for the express purpose of carrying out *Implementing The President's "Department Of Government Efficiency" Cost Efficiency Initiative* Executive Order. The power to employ "such other officers and employees of the Commission" is the Chairman's alone and the statute vests no independent authority in non-chair Commissioners to terminate these employees. 15 U.S.C. § 2053 (g)(2).

21. In short, the reinstated Commissioners have invalidated almost every action of the CPSC prior to their reinstatement, calling into question the legal validity of the important safety work of the Commission, reversing work to effectuate many of President Trump's lawful executive orders regarding the operations of federal agencies, and undermining CPSC's vital mission on behalf of American families.

22. As the Supreme Court put it on May 22, 2025, in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), "[a] stay is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." The reinstated Commissioners' actions are actively disrupting and will continue to disrupt the business of the CPSC. Orderly functioning of the CPSC will be next to impossible if the three reinstated commissioners are permitted to remain at the CPSC, if the vote taken by the reinstated Commissioners on June 17, 2025, is any indication.

\* \* \*

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 17th day of June, 2025.

_____
Tripp DeMoss
Senior Counsel